## THE STATE OF NEVADA, APPELLANT, *v.* FRANK TILFORD, ET AL., RESPONDENTS.

The Board of Education of Storey County, prior to the 20th of March, 1865, were " county officers," within the meaning of that phrase as used in the 13th section of Article XVII., Constitution of Nevada.

There are certain county offices designated in the Constitution. These offices cannot be abolished without a constitutional change, nor the incumbents removed prior to January, 1867.

Other county offices can be created or abolished at the will of the Legislature. If the office is abolished does not the officer cease to exist as such?

The Legislature is required to make a uniform system of county government and to provide for a uniform system of public schools. In carrying out these provisions, they may abolish any county offices other than those specially created by the Constitution.

State of Nevada *v.* Tilford *et al.*

The 13th Section, Article XVII., of the Constitution, is subject to this modification. It provides for continuance in office of all county officers whose office shall not be legally abolished before the first Monday of January, 1867.

Tilford held the office of Superintendent of Public Instruction *ex officio* as President of the Board of Education. The Board of which he was President is abolished. His Presidency ceases with the existence of the Board. His office of Superintendent being a mere *ex officio* attachment to the other office, expires with his Presidency.

Taylor and others claiming to be trustees of school districts, having been appointed by a Board having no legal existence, are not officers known to the law.

APPEAL from the First Judicial District of the State of Nevada, Storey County, Hon. CALEB BURBANK presiding.

The facts are stated in the opinion of the Court.

*D. Corson,* District Attorney of Storey County, Counsel for Plaintiff and Appellant.

*James F. Hubbard* and *Frank Tilford,* Counsel for Respondent Tilford.

*Taylor & Campbell,* Counsel for Taylor *et al.,* Appellants.

Points by Appellant and Plaintiff :

*First*—The Act of March 20, 1865, repeals all former school laws.

*Second*—The continued existence of the Board of Education would be inconsistent with Section 2, Article XI., of the Constitution. This must override the more general provisions of Section 13, Article XVII.

*Third*—Section 13, Article XVII., only refers to county officers known to the general system of county government. It does not include special county officers only having an existence in one county in the State.

*Fourth*—Tilford did not hold the office or perform the duties of Superintendent of Public Schools. The duties of that office devolved upon the Board of Education in Storey County. No such office as Superintendent of Public Schools has existed in Storey county since January, 1863.

*Fifth*—After the Board of Education was abolished, Tilford ceased to be Superintendent of Public Instruction, for he only held this latter office *ex-officio*, by virtue of his Presidency of the Board.

16

*Sixth*—Tilford, holding no office after March 20th, 1865, could not legally appoint School Trustees.

Points of Respondent Tilford:

*First*—Frank Tilford and the members of the Board of Education of Storey county were county officers when the Constitution was adopted. Their offices are not inconsistent with the Constitution.

*Second*—That clause of the Constitution which requires a uniform system of common schools only requires uniformity in affording educational advantages to the rising generation; that the schools should uniformly be kept open, and education generally diffused throughout the State. Not that each county should be governed in its school system by the same number and class of officers.

*Third*—Respondent Tilford and the Board of Education were county officers when the Constitution was adopted. Their offices were not inconsistent with that instrument. By 13th Section, Article XVII., of the Constitution, they are continued in office for two years. Continuing them in office continues the office itself for the same period. Consequently, the office itself of the Board of Education became a constitutional office, and beyond the power of the Legislature to abolish until after January 1st, 1867. (*The People* v. *Wells*, 2 Cal. 198; same case, 610; *Coffin* v. *State*, 7 Ind. 157; *Warren* v. *People*, 2 Denio, 278.)

*Fourth*—Even if the Legislature had the power to abolish the Board of Education, it is apparent they intended to retain in office the Superintendent of Public Instruction of Storey County, with all the powers and duties of Superintendent of Public Schools.

*Fifth*—The Board of Education being still in existence in Storey county, and exercising all the functions to be performed by the District Trustees in other counties, the appointment of Taylor et al. as Trustees was premature and *illegal*.

Points made by Taylor and others, Defendants and Appellants:

The Legislature, in pursuance of Section 2, Article XI., of

the Constitution, provided by Act passed March 20th, 1865, for a uniform system of common schools. To carry out that system they provided for a " Superintendent of Public Schools " in each county, and three Trustees in each school district of the State. No election was to take place for such " Superintendent of Public Schools" until the Fall of 1866, and the parties then elected were to enter on the duties of their office in January, 1867. It was not the intention of the Legislature that the system should be in operation for two years. But they intended that the Superintendent of Public *Instruction* in Storey County, and the Superintendents of *Common* Schools in other counties (officers of similar name and possessing similar powers under the old law), should perform the duties of " Superintendents of Public Schools " until such officers should be elected and qualified to enter on the duties of their office in January, 1867.

Opinion by BEATTY, J., full Bench concurring.

This is a case where an agreed statement was submitted to the District Court of the First Judicial District under the provisions of the three hundred and twenty-sixth, three hundred and twenty-seventh, and three hundred and twenty-eighth sections of the Practice Act, to determine certain rights without the institution of a regular action.

It is intended for a substitute for a proceeding in the nature of a *quo warranto*. It is desired by this proceeding to determine: First—Whether the persons now claiming to exercise the powers of a Board of Education for Storey County are legally authorized to exercise such functions. Second—Whether Frank Tilford, President of said Board, is legally qualified to exercise the office of County Superintendent of Public Schools. Third—Whether Robert H. Taylor and others who hold appointments as School Trustees under said Tilford are legally qualified to exercise the duties of said offices.

This appears to us somewhat like uniting three distinct actions in one proceeding; but as no exception is taken to this mode of proceeding by either party, and as we can see no evil which will result from settling all three of these questions, we will proceed to examine and decide each one of ·them.

State of Nevada *v.* Tilford *et al.*

In determining the first point this preliminary question is presented to our consideration : Were the Board of Education in Storey County, prior to the 20th of March, 1865, county officers in the sense in which that term is used in the thirteenth section of article seventeen of the Constitution ? We have no hesitation in answering this in the affirmative. They were elected by the voters of the entire county, and their jurisdiction extends over the whole county. There can be no doubt they were county officers. The term county officers, as used in the thirteenth section of the seventeenth article of the Constitution does not seem to be used in any restricted sense. There might, perhaps, be a plausible argument in favor of the proposition that it only referred to those county officers which are named in the Constitution, and which constitute a part of the framework of our Government as established by that instrument.

But we are of the opinion that no such restriction upon the more general sense of these terms can be inferred from anything in that section. If, then, we were not to look beyond the thirteenth section of the seventeenth article of the Constitution, we should say they were county officers, entitled to hold over until January, 1867. But admitting this as a general proposition, can it be contended that they would remain county officers after their office was abolished ?

The Constitution provides for the election of County Commissioners, County Clerks, County Recorders, District Attorneys, Sheriffs, County Surveyors, and Public Administrators. Such constitutional offices, the Legislature could not abolish, and the incumbents would have a right to hold until 1867. As to other county offices, the Legislature is allowed by the Constitution to create or abolish them. If it can abolish the office, does it not necessarily follow that the officer ceases to exist as such when the office is abolished. Certainly if they can be called officers they cease to be able to exercise any of the duties of the office. It may be contended that as the Constitution retains all county officers in office until 1867, it amounts to a prohibition on the Legislature from abolishing any county office which was in existence when the Constitution was adopted, before January, 1867. A sufficient answer to that proposition

is, that the Constitution provides in section twenty-five of article four, that "the Legislature shall establish a system of county and township government, which shall be uniform throughout the State."

Section two of article eleven of the Constitution requires the Legislature "to provide for a uniform system of public schools." There were county officers in Storey County which were not to be found in any other county in the State. The system of schools was different there from that in any other county. It became the imperative duty of the Legislature to either alter the systems of school and county government in Storey county so as to conform to the other counties—to make the other counties conform to Storey—or to adopt a new system of school and county government for all the counties. Certainly the Legislature was not restricted in its choice of these three alternatives. The Legislature adopted the latter alternative. It created a new system and repealed all laws inconsistent therewith. It conferred all the powers of the Board of Education on other officers. This legislation, under the express requirements of the Constitution, has had the effect to abolish the office of Board of Education for Storey County. There being no such office, the persons formerly members of that Board can exercise no official acts as such.

We hold that the general language of the thirteenth section of the seventeenth article is subject to this modification—that it provides for the continuance in office of all county officers whose offices may not be legally abolished before the first Monday of January, 1867.

It is claimed for Tilford, that although the Board, of which he is or was President, is legislated out of office, still he, as Superintendent of Public *Instruction*, is entitled to hold and exercise the office of Superintendent of Public *Schools*. That the difference of a single word in the title of the office, when the duties are similar, does not make it a different office. We certainly are not disposed to question the correctness of this as a general proposition.

The Legislature, when legislating in regard to constitutional offices, has not deemed it necessary to adhere strictly to the names given in the Constitution. We believe that an examina-

tion of the laws passed last Winter will show that the terms
" District Attorney" and " Prosecuting Attorney," have been
used indiscriminately to designate the officer called in the Con-
stitution District Attorney. But in the case before us the
official powers of Superintendent of Public Instruction, were
not at all those of the Superintendent of *Common* Schools
under the old law, nor are they those of the Superintendent
of *Public* Schools under the present law. The Board of which
he was President possessed the most important powers that did
and do belong to the Superintendent of Schools; but it is
hardly worth while to discuss the similarity or dissimilarity of
the powers of these several officers. What ever powers Til-
ford possessed he derived from his position of member and
President of the Board of Education. The Board has been
abolished, and with it, of course, his membership and presi-
dency. As the office of Superintendent of Public Instruction
is merely *ex officio* derived from and dependent upon the presi-
dency of the Board of Education, his powers and duties as
Superintendent ceased when the Board was abolished.

It is hardly necessary to add that as Taylor and others,
claiming to act as Trustees of School Districts, were appointed
by a Board which had been abolished before their appointment,
they are not and never have been Trustees of the several School
Districts of Storey County.

We have come somewhat reluctantly to these conclusions,
because the decision is calculated to derange the public schools
of Storey County; but prompt action on the part of the
County Commissioners in appointing a Superintendent of
Public and Common Schools will probably prevent any serious
derangement.

The judgment of the Court below is reversed, and the cause
is remanded with directions to enter up a judgment in accord-
ance with this opinion, amoving all the defendants from the
several offices by them claimed.