# DWIGHT E. WOODBRIDGE v. CITY OF DULUTH and Others.[1]

### March 7, 1913.

### Nos. 18,065—(276).

**Commission charter — power of old city council.**

> Under the provision of the commission charter of the city of Duluth, adopted December 3, 1912, and going into effect 30 days thereafter, that the officers of the city, holding office at the time such charter takes effect, shall continue in office until the commission thereby provided for shall be elected and take office, the city council chosen under the former charter, and holding over under the new by virtue of such provision, had the power to order the

[1] Reported in 140 N. W. 182.

issue of city bonds authorized under the former charter, and likewise to order the extension of a sewer, and to provide for the purchase of an automobile for the fire department; there being involved in such matters only the ordinary responsibilities incident to the administration of municipal affairs.

Action in the district court for St. Louis county to restrain the city and its officers from issuing certain municipal bonds, from proceeding to let a contract for a certain sewer and from purchasing a certain automobile. From an order sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*Charles E. Adams,* for appellant.

*H. A. Carmichel* and *William P. Harrison,* for respondents.

PHILIP E. BROWN, J.

Appeal by the plaintiff from an order sustaining a general demurrer to his complaint, in an action brought by him as a taxpayer of Duluth, for an injunction restraining the city officers from (1) issuing $100,000 of water and light bonds; (2) from extending a certain sewer; and (3) from purchasing an automobile for the fire department.

On December 3, 1912, the city of Duluth, which theretofore had been operating under a home rule charter, with a mayor and a city council of 16 aldermen, having the usual powers, adopted a charter for a commission form of government, whereby its powers were vested in a mayor and four commissioners, who were to constitute the city council. Under this charter, however, these officers were not to be elected until April 1, 1913, and were not to take office until April 14; it being provided that "until April 14, 1913, at 12 o'clock noon, and no longer, the officers holding office at the time this charter takes effect shall continue in office."

On January 6, 1913, the new charter having come into operation, the said council of 16, assuming to act under the same, 13 members being present and all voting therefor, resolved: (1) To issue $100,-000 of water and light bonds, which had previously been duly authorized under the old charter, and which, by the terms of their authorization, were required to be sold before April 1, 1913; (2) to ex-

tend a sewer, the cost thereof to be assessed against the property specially benefited thereby; and on the same date an ordinance was presented for its first reading, providing for the purchase of an automobile for the fire department. Thereafter the council proceeded to take the steps necessary to the accomplishment of these purposes, whereupon the plaintiff instituted this action, setting up, by appropriate allegations, in his complaint the facts substantially as above stated, together with the formal allegations usually incorporated in the complaint in an action for injunction. The parties stipulated that a copy of the commission charter should be certified up as a part of the record, to be considered by this court; and we will treat it as though it were incorporated in the complaint.

The material provisions of this charter are, in substance, as follows: The city council shall consist of a mayor and four commissioners, who shall be vested with all the legislative and executive authority of the city; they being required to devote their entire time to the city during business hours, and to receive $4,000 per year for their services. The mayor shall be a member of the council, and may vote as such, and is to be the president thereof, but is to have no veto. He is made the chief executive of the city; but the excutive and administrative powers of the city are distributed among the members of the commission in a certain manner not necessary here to detail. The manner of making local improvements is provided for; the commission being authorized, by a four-fifths vote, to order the construction of any sidewalk or sewer, etc., which it deems necessary for public convenience or safety, and may cause the cost thereof to be assessed against the property specially benefited thereby. Finally it is provided, as noted above, that the officers of the city, holding office at the time of the taking effect of the new charter, shall hold office until April 14, the date of the incoming of the commission.

The old charter, which we have designated as the home rule charter, was different from the new charter, which we have called the commission charter, in many respects, the salient points of difference, here material, being that under the former the city was divided into eight wards, two alderman being chosen from each ward, and these constituted the city council, of which the mayor was not a member,

but over whose enactments he had the power of veto; the council had no executive powers, and, besides the mayor, there were a city clerk, a city treasurer, and other officers; and, except in certain instances not here material, a local improvement, such as the construction of a sewer, could not be ordered, except upon a petition filed by a certain per cent of the property owners.

No claim is made of any irregularity in any of the proceedings complained of, other than such as may inhere in the differences between the provisions of the two charters noted above; nor is it urged that any statutory provisions have been violated. Broadly stated, the plaintiff's sole claim is that the council of 16 had no power over the matters with which they undertook to deal, and particularly that, if it should be deemed that power was granted to them to administer the ordinary affairs of the city until the incoming of the commission, the matters in question did not come within this category, but were matters extraordinary, which should have been left to be dealt with by the latter.

This claim does not impress us as forceful. We are of the opinion that the several affirmative acts of the council, which form the basis of the plaintiff's alleged grievance, involve merely the ordinary responsibilities incident to the administration of the affairs of the municipality, and which call for the exercise of discretion on the part of the duly constituted and acting authorities, both as to the necessity of, and time for, taking action.

The question to be determined is thus reduced to this: Did the old council, proceeding in the manner, as regards mode of procedure and constitution of the council, as they would have done under the old charter, except that there was no petition of the property owners for the sewer, have the power to act in the premises? It requires no discussion to demonstrate that in recent years the legislature has favored placing, in the hands of municipalities, all questions, subject to few exceptions, concerning their self-government; witness the legislation to that end. Furthermore, it is undesirable and out of accord with judicial determination, from the earliest times, that any interregnum should be allowed to exist in the transition of forms of government or change of officers.

It is true that Const. art. 4, § 36, provides that a charter, ratified by the electors of a municipality, becomes effective "at the end of thirty days thereafter," and that, by virtue of this provision, the home rule charter had become functus officio on January 6, when the course of action here complained of was inaugurated; but it is equally true that on that date there was no council or commission or other constituted municipal officers other than those, including the council of 16, chosen under the old charter, and holding over under the express provision of the new. It is unthinkable that the people of the city should be without government from the time when the commission charter took effect to the time when, under its provisions, the council of five should take charge; and the charter in terms undertakes to provide against this very contingency. Moreover, it is unreasonable to assume that officers must be elected under a charter before it has gone into effect, especially where the charter expressly provides otherwise. So we must conclude that the people of Duluth realized that for a brief period its affairs would have to be conducted by officers more or less different, both in number and denomination, from those to be chosen under the new charter, and to whom the municipal affairs were ultimately to be committed. And as the legislature, who undoubtedly have power to regulate such a situation as the one here presented, have failed to speak thereon, in whom should the power be deemed to be vested to provide the method of conducting the city government during the time intervening before the incoming of the new officers? We think the answer to this question must be: The electors of the municipality, to whom all ultimate powers in local affairs have been committed, subject only to limitations expressly declared, none of which are here material—and the charter itself must be deemed to be the due expression of the will of these electors that the administration of all ordinary affairs of the city government shall be committed to the old officers until the qualification of the new.

Questions involving government must not be determined along technical lines. Practical and broad considerations should control. The matter of formal differences between the administration of the city's affairs under the two charters is not important, and the ques-

tion presented, both to us and to the people of the city, is how to work out the administration of its public affairs during the short period intervening between the passing of the old government and the full and complete inauguration of the new.

We find no ground warranting us in declaring that the method adopted was illegal, or that the acts complained of were unauthorized. Commonwealth v. Wyman, 137 Pa. St. 508, 21 Atl. 389, supports the views we have expressed to a very considerable extent.

Order affirmed.