STATE EX REL. CITY OF MINNEAPOLIS v. AL. P. ERICKSON, AS AUDITOR OF HENNEPIN COUNTY.[1]

November 23, 1923.

No. 23,864.

**Special act partially repealed by act of 1919.**

1. Chapter 338, Sp. Laws 1879, creating a board of tax levy for Hennepin County is not an indivisible act. The legislature could repeal it in part and did so by enacting chapter 252, Laws 1919.

**Act of 1919 constitutional.**

2. Chapter 252 does not contravene section 33, article 4, of the state Constitution prohibiting the amendment, extension or modification of special or local laws by a general law.

[1]Reported in 195 N. W. 919.

**Home rule charter may deal with municipal taxation.**

 3. It was within the power of the electors of the city of Minneapolis to withdraw the city from the operation of chapter 338, by the adoption of a home rule charter. Taxation for municipal purposes is purely a matter of municipal concern and may be dealt with in a home rule charter.

**Self-government of county not affected by act of 1919.**

 4. The partial repeal of chapter 338, effected by chapter 252, left a board in existence which has control of the rates of county taxes in Hennepin county. Five of the seven members of the board are officers of the city of Minneapolis. This result does not amount to an unauthorized interference with the county's right of local self-government or negative the existence of a legislative intention to repeal the special law in part.

Upon the relation of the city of Minneapolis the district court of Hennepin county granted its alternative writ of mandamus directed to the auditor of that county commanding him to fix the rate of tax levy as required by the board of park commissioners. Defendant's motion to quash the writ and his demurrer to the petition and writ were denied, Montgomery, J. From the order denying his motion, the county auditor appealed. Affirmed.

*Floyd B. Olson*, County Attorney, and *Frank J. Williams*, Assistant County Attorney, for appellant.

*Shearer, Byard & Trogner*, for respondent.

LEES, C.

The county auditor of Hennepin county has appealed from an order overruling a demurrer and denying his motion to quash an alternative writ of mandamus by which he was required to do the acts hereinafter mentioned.

Minneapolis has a home rule charter, adopted November 2, 1920. Chapter 16 requires the board of park commissioners to transmit to the county auditor annually, on or before the first day of October, an estimate of the amount of money necessary to pay the interest on bonds issued by the board and to maintain the city parks for the next year. Upon receiving it, the auditor determines what per

cent of the taxable property in the city will equal the amount specified in the estimate and carries such amount into the tax list prepared pursuant to section 2059, G. S. 1913.

Chapter 15 of the charter creates a board of estimate and taxation composed of five designated city officials. Section 2 requires every board and city department having power to levy taxes to submit annually to the board an estimate of its financial needs for the following year. On or before October 15, the board must determine the maximum amount of money which may be raised by general taxation, and no taxes can be levied in excess thereof. Section 7 of chapter 15 reads thus:

"All taxes may be levied and collected within the maximum fixed by statute and within the maximum fixed by the Board of Estimate and Taxation for the various purposes of said taxation and without regard to the maximum rate of taxation fixed from time to time by any board other than the boards and departments governed by this chapter."

It is identical with section 7, chapter 252, Laws 1919, save that the words "so long as this act continues in force" are omitted.

Chapter 338, Sp. Laws 1879, created a board of tax levy for Hennepin county, composed of the chairman of the county board, the county auditor, and five designated officials of the city of Minneapolis. It required the board to meet annually on the second Monday in September and complete its work not later than the first Tuesday in October. The board was authorized to determine the maximum rate of taxation which the county board, the city council, the board of education, the board of park commissioners and the library board of the city might severally levy. It was the duty of the board to reduce the maximum rate of taxation to the lowest practicable limit and no levy could be made in excess of the maximum so fixed. This act has never been expressly amended, nor has there been an express repeal of any of its provisions. Whether any portion of it has been repealed by implication is another question.

In August of this year, the board of park commissioners adopted an estimate of expenditures for the year 1924, submitted it to the

board of estimate and taxation, and the same was approved. The maximum to be raised for the general park fund was fixed at $418,-350. On October 3, the board of park commissioners determined by resolution to levy a tax sufficient to raise that amount and transmitted a certified copy of the resolution to the county auditor. On October 2, the board of tax levy fixed the maximum rate of the levy in question at one mill on the dollar. A one mill rate will produce $139,459 less than the amount specified in the estimate and budget of the park board approved by the board of estimate and taxation. The conflict of authority between that board and the board of tax levy placed the auditor in a position where he had to disregard the action of one or the other. He announced that he recognized the authority of the board of tax levy as paramount and that he would establish the one mill rate. Thereupon the city obtained the alternative writ commanding him to determine the rate so as to meet the requirements of the board of park commissioners or show cause why he had not done so. On the return day he moved to quash the writ and demurred to the petition and the writ. He prosecutes this appeal to reverse an adverse decision of the district court.

The court held that chapter 252, p. 250, Laws 1919, repealed by implication so much of the special act of 1879 as empowered the board of tax levy to fix maximum rates of taxation in the city of Minneapolis and lodged the power in the board of estimate and taxation. Appellant asserts that this was error for the following reasons: (1) The special act is indivisible and cannot be repealed in part; (2) if a partial repeal was intended, chapter 252, p. 250, Laws 1919, is invalid because it is not in harmony with that portion of section 33, article 4, of the state Constitution, which reads as follows: "The legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same;" (3) the city could not withdraw from the operation of the special act by incorporating section 7, chapter 252, in the home rule charter; (4) if the legislature intended to repeal that portion of the special act which related to city taxation and to leave in effect so much as related to county taxation, chapter 252 is invalid because it attempts to confer power on city officers to regulate county affairs.

1. The board of tax levy controlled maximum rates of taxation in both county and city. Chapter 252 placed control over city rates in the hands of the board of estimate and taxation. Appellant contends that the primary function of the first named board was to adjust and co-ordinate the county and city tax levies so that, when added to the levy of state taxes, the burden upon the taxpayers would not be too heavy, and that if this were not so the special act would have been invalid because it would have deprived both county and city of the right of local self-government. As we understand it, this argument is intended to demonstrate that in enacting chapter 252, p. 250, Laws 1919, it could not have been the purpose of the legislature to repeal the special act.

However this may be, one thing is certain. The legislature has created two boards, and if both have power to fix the maximum rate of taxation in the city and they chance to disagree, one or the other must recede from its position or there can be no tax levy. It is not to be supposed that the legislature contemplated the situation which has arisen in the instant case. The language of section 7, quoted above, compels the conclusion that the board of estimate and taxation has exclusive authority, since taxes may be levied and collected at the maximum rate it fixes *without regard to the rates fixed by any board not governed by chapter 252.*

Granting that, by the act of 1879, a single taxing district was established and a board created to control and equalize the tax rates therein, the plan the legislature had in mind was abandoned in 1919 and the city was made a single taxing district with a separate board in control. At the same time the legislature declared that it should be a misdemeanor for any city officer knowingly to vote for any contract or appropriation, or order any work, or make any purchase, or issue or sign any warrant or check which would have the effect of exceeding the available appropriation or fund, but authorized the board to permit the transfer of moneys from one fund or appropriation to another. See section 4, chapter 252. These provisions clearly indicate an intention to change from the system adopted in 1879 to one better suited to the needs of a large and growing city. The powers and duties of the board of tax levy may

have been indivisible, but that fact would not deprive the legislature of power to repeal part of the special act. The effect of such a repeal might be more far-reaching than the legislature had supposed, but this does not demonstrate that there was no intention to effect a partial repeal of the act.

2. This court has held that section 33, article 4, of the Constitution is not contravened by a general law which "cuts into special laws," State v. Sullivan, 62 Minn. 283, 64 N. W. 813, or by the repeal of special laws inconsistent with a general law, although this may have the effect of leaving part of one or more special laws in force and unrepealed, State v. Copeland, 66 Minn. 315, 69 N. W. 27, 34 L. R. A. 777, 61 Am. St. 410; that there may be a partial repeal of a special act; that the word "modify" as used in the Constitution is synonymous with "extend" or "enlarge," and hence what the Constitution prohibits is the expansion or giving greater scope and effect to special laws by a general law. State v. Lincoln, 133 Minn. 178, 158 N. W. 50. Appellant attempts to distinguish these cases from the instant case on the theory that chapter 252 is a special law thinly disguised as a general law. Chapter 252 applies only to cities of the first class, not organized under section 36, article 4, of the Constitution. Minneapolis was the only city in the state answering to that description when the law was enacted. But that fact would not be a constitutional objection if the basis of classification was proper. Marwin v. Board of A. C. 140 Minn. 346, 168 N. W. 17. In Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922, and Lodoen v. City of Warren, 146 Minn. 181, 178 N. W. 741, it was held that, when the legislature enacted a law applicable to cities of the fourth class, it might except cities having home rule charters from the operation of the law, and that such a classification was not arbitrary.

3. The legislature has declared that a home rule charter "may omit provisions in reference to any department contained in special laws then operative in said city or village, and provide that such laws, or such parts thereof as are specified, shall continue in force therein." G. S. 1913, § 1345. This is an express grant of power, and, as applied to the city of Minneapolis, enabled its electors to

omit or include in the charter adopted in 1920 any or all of the provisions of the Special Act of 1879. They omitted all of them.

It is well settled that on subjects of a purely municipal character the provisions of a home rule charter must be given full force and effect. The constitutional amendment directed the legislature to prescribe by law the general limits within which charters shall be framed, and that body has said that a charter may provide for the regulation of all local or municipal functions as fully as the legislature might have done before the amendment was adopted. In other words, as to matters of municipal concern the people of a city, in adopting a charter, have all the power possessed by the legislature save as such power has been expressly or impliedly withheld. Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627.

Taxation for municipal purposes is purely a matter of municipal character. It is a subject which may be dealt with in a home rule charter. It is in the same category as special assessments to meet the expense of local improvements, the division of a city into assessment districts to provide funds for the construction of sewers, and the imposition of a wheelage tax upon vehicles. It has been held that each of these subjects may be covered by the provisions of a home rule charter. Turner v. Snyder, 101 Minn. 481, 112 N. W. 868; State v. City of Ely, 129 Minn. 40, 151 N. W. 545, Ann. Cas. 1916B, 189; In re Delinquent Taxes, Polk County, 147 Minn. 344, 180 N. W. 240; Park v. City of Duluth, supra, and in the case last cited it is broadly intimated that a city may provide in its charter for its own system of local taxation. Summing up the decision dealing with municipal home rule in 7 Minn. Law Rev. 306, 313, Professor William Anderson says:

"Upon reading these cases * * * one gets the impression that the supreme court has been no less liberal than the legislature toward the principle of local self-government. Within the field of true municipal functions, which is a rapidly growing domain, cities are given substantially the same power to confer authority upon themselves by home rule charters as the legislature formerly exercised. The fact that the cities charter themselves instead of receiving their powers directly from the legislature is a distinction without a real difference."

4. The board of tax levy is composed of seven members, five of whom are officers of the city of Minneapolis. Appellant contends that, by the partial repeal of the act creating the board, governmental powers with respect to taxation in Hennepin county will be exercised by officers not chosen by the electors of the county at large, and this would be a departure from the fundamental principles of local self-government, which is the distinctive feature of our republican system. There is nothing in the Constitution which requires the election of a body having control of taxation by vote of all the electors in the taxing district. In many counties the commissioners are chosen by districts, and, so far as we know, no one has ever questioned their power to levy county taxes. The same system prevails in the state government, for senators and representatives are not elected by the voters of the state at large, but by those in the several districts into which the state is divided, and the legislature levies the state tax. We see no disregard of the principle that there shall be no taxation without representation if a board, not elected by all the voters in the county, exercises control over county taxes, and no repudiation of the doctrine that the political subdivisions of the state should have the right of local self-government.

Order affirmed.