STATE EX REL. COUNTY OF HENNEPIN AND OTHERS v. CLIFFORD A. BRANDT.[1]

January 16, 1948.

No. 34,602.

346

*Michael J. Dillon,* County Attorney, and *Frank J. Williams* and *John K. Harvey,* Assistant County Attorneys, for relators.

*John F. Bonner,* City Attorney, for respondent.

MATSON, JUSTICE.

Writ of quo warranto issued from this court upon relation of the county of Hennepin, with the consent of the attorney general, directing respondent to show by what warrant he holds the office of member of the board of tax levy for said county.

The board of tax levy for Hennepin county was created by, and exists pursuant to, Sp. L. 1879, c. 338, as amended by Sp. L. 1885, c. 84, and Sp. L. 1887, c. 110. Section 1 thereof as amended provides:

"Section 1. There is hereby created and constituted in and for the county of Hennepin, a board which is hereby designated and shall be known as the board of tax levy, and which shall be composed of the chairman of the board of county commissioners, the county auditor, the president of the board of education of the city of Minneapolis, the president of the board of park commissioners of the city of Minneapolis, the chairman of the committee on ways and means of the city council of the city of Minneapolis, *the comptroller of the city of Minneapolis,* and the mayor of the city of Minneapolis, which several officers shall be *ex officio* the members of the said board of tax levy." (Italics supplied.)

Section 2 provides that said board shall fix the maximum rate of taxation for the various purposes for which the board of county commissioners and certain boards of the city may levy taxes. By § 3, the levy of any tax in excess of such maximum rate is void as to the excess. Since the creation in 1919 of a board of estimate and taxation for the city of Minneapolis, the only function of the board has been to fix the maximum tax rate for the county.[2]

On August 27, 1947, O. J. Turner, the city comptroller for Minneapolis, died, leaving his office vacant. During Turner's last illness,

[2]L. 1919, c. 252, created a board of estimate and taxation for Minneapolis and vested it with power to fix the maximum rates of taxation for the various city boards and departments. This act is incorporated into c. XV of the Minneapolis city charter. In State ex rel. City of Minneapolis v. Erickson, 157 Minn. 200, 195 N. W. 919, and State ex rel. County of Hennepin v. Erickson, 160 Minn. 510, 200 N. W. 813, this court held that since the creation of the board of estimate and taxation the board of tax levy has power to fix the maximum rate for the county budget only.

respondent, the senior utility engineer of the city, acted as assistant city comptroller in addition to his regular duties. Two days after Turner's death, the city council by resolution appointed respondent "to take complete charge and control of the administration of the routine affairs of said office until the appointment of a city comptroller by the City Council to succeed O. J. Turner, deceased." This resolution, after vesting respondent with certain enumerated powers, provided that he should "as Assistant City Comptroller, be and he is hereby vested with all routine powers of the office of the City Comptroller that may be necessary for the purpose of the administration of said office, and all of the powers and duties conferred upon the City Comptroller by the charter of the City of Minneapolis, or any ordinance, resolution or action of the City Council." Respondent was directed to give a bond in the same sum as that required for the city comptroller.

Relators' challenge to respondent's title to the office of member of the board of tax levy for Hennepin county raises no issue as to the validity of respondent's title to the office of city comptroller. By necessary implication, a direct proceeding for determining the validity of title to a certain office excludes as a collateral matter any attack upon the title to a separate and independent office. The attack must be direct as to both person and office. See, Mechem, Public Officers, § 330; Constantineau, De Facto Doctrine, § 23. In quo warranto proceedings specifically brought to determine an incumbent's title to office A, a collateral attack may not be made upon such incumbent's title to office B, a separate and distinct office, although the incumbent of office B is ex officio the incumbent of office A. In the instant case, the two offices are as independent of each other as if occupied by different persons, in that the duties of the two offices, as well as the municipal entities to which the offices pertain, are separate and distinct and are governed, as hereinafter noted, by different laws. Whether respondent is a *de jure* member of the county board of tax levy is dependent upon the legislative intent as expressed by Sp. L. 1879, c. 338, as amended. As a preliminary, however, to the fitting of the statutory shoe to the

last, it becomes necessary to determine respondent's status as comptroller.

Obviously, by the very terms of the resolution purporting to appoint respondent assistant city comptroller, he is not comptroller *de jure*. It is to be noted, however, that the resolution purports *to appoint him assistant city comptroller and to vest him with all the powers and duties conferred upon the city comptroller* by the city charter or by any ordinance, resolution, or act of the city council. Whether the city council had the power to appoint, or in the manner followed succeeded in appointing, respondent assistant city comptroller *de jure,* need not, under the decisions of this court as applied to the issue and to the facts herein, be determined. In State ex rel. Briggs v. McIlraith, 113 Minn. 237, 240, 129 N. W. 377, 378, involving a mandamus proceeding to compel the treasurer of the city of East Grand Forks to pay a warrant, the city treasurer as defendant contended that the warrant was not legally authenticated, in that it was signed by "Geo. K. Chambers, Asst. City Clerk," and that said Chambers was not authorized to sign the warrant, in that he was not the city clerk *de facto* or otherwise. In affirming the action of the trial court in ordering judgment for a peremptory writ, this court said:

"* * * The facts in reference to this matter are that one Zimmerman was city clerk, having been duly appointed and qualified as such. On December 9, 1909, Zimmerman absconded from the state and abandoned the office, and ever since then his whereabouts have been unknown. On the sixteenth of December, 1909, the council appointed Chambers 'assistant city clerk,' and he duly qualified, by taking the oath of office, took possession of the office, and thereafter performed all the duties pertaining thereto.

"It is probable that this appointment was unauthorized, and that Chambers did not thereby become a de jure officer. But his entering into possession of the office thereunder, and his continued discharge of the duties thereof, with the knowledge and co-operation of the city authorities and the public in general, made him a de facto officer, and as such his attestation of the warrant here in question

was valid. It is not controlling that he designated his official title as 'Assistant City Clerk.' He was in possession of the office of city clerk, and discharging the duties thereof under color of appointment and with public assent, and was therefore de facto city clerk."[3]

Respondent here, although *officially* designated as assistant city comptroller, is *de facto* city comptroller, in that *he is in possession of the office of city comptroller and has been and is discharging its duties with public assent under the color of authority provided by the resolution of the city council which purports to vest in him all the powers and duties of that office. He is not a mere usurper or intruder.* Substance, as indicated by the possession of office and by the unchallenged exercise of the powers and duties thereof, under the color of title or authority, prevails over a mere designation of official title. The *de facto* doctrine has its base in a sound public policy, which recognizes that it is necessary to protect those who deal with public officers apparently holding office under valid authority and in such a manner as to warrant an assumption that they are officers in fact. See, The Marckel Co. v. Zitzow, 218 Minn. 305, 15 N. W. (2d) 777; Carli v. Rhener, 27 Minn. 292, 7 N. W. 139; Hamlin v. Kassafer, 15 Or. 456, 15 P. 778, 3 A. S. R. 176.

Whether respondent as *de facto* city comptroller is a *de jure* member of the board of tax levy must depend on the construction given to Sp. L. 1879, c. 338, as amended. This act has been sustained on the theory that it created a new quasi-municipal corporation in the form of a special taxing district. State ex rel. City of Minneapolis v. Erickson, 157 Minn. 200, 195 N. W. 919; State ex rel. County of Hennepin v. Erickson, 160 Minn. 510, 200 N. W. 813. Thus, the board of tax levy is not a department of either the city or the county, although both are represented on it. It is an independent board established by the legislature and invested by it with the power to fix maximum tax levies. Its powers and its membership qualifications are defined not by any statute regulating the

[3]See, Lodgord v. City of East Grand Forks, 105 Minn. 180, 117 N. W. 341; Fulton v. Town of Andrea, 70 Minn. 445, 73 N. W. 256; 29 Cyc. 1392; State v. Carroll, 38 Conn. 449, 9 Am. R. 409; 11 Minn. L. Rev. 671.

municipal officers of either the city or the county or by any provision in the city charter, but solely by the terms of the act whereby it was created. State ex rel. St. Paul Gaslight Co. v. McCardy, 62 Minn. 509, 64 N. W. 1133. Respondent as an ex officio member of the board of tax levy occupies an office separate and distinct from that of city comptroller. While acting as comptroller, he is subject to the provisions of the city charter of Minneapolis, but his acts as a member of the board of tax levy are subject to Sp. L. 1879, c. 338, as amended, and are not those of a city officer, but those of an officer of a special taxing unit established by the legislature. As comptroller, his duties are administrative, whereas his duties as a member of the board of tax levy involve the exercise of delegated legislative power. Clearly, the two offices are separate and distinct. Where by law an incumbent of one office is ex officio the incumbent of another office, such incumbent occupies two separate and distinct offices if the duties of the two official capacities are different in their general nature and are separate and distinct so that the incumbent, while acting in one capacity, is governed by one law, and while acting in the other is governed by a different and independent law. See, Union Bank & Trust Co. v. County of Los Angeles, 2 Cal. App. (2d) 600, 608, 38 P. (2d) 442, 446; 46 C. J., Officers, p. 934.

Relators' contention that Sp. L. 1879, c. 338, as amended, being a delegation of the taxing power, is to be strictly construed is rejected. In Governmental Research Bureau, Inc. v. Borgen, 224 Minn. 313, 319, 28 N. W. (2d) 760, 764, this court stated:

"The better rule, and the one we adopt, is that statutes imposing taxes and providing means for the collection of the same should be construed strictly insofar as they may operate to deprive the citizen of his property by summary proceedings or to impose penalties or forfeitures upon him; but otherwise tax laws ought to be given a reasonable construction, without bias or prejudice against either the taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes subserve."

The rule of reasonable construction is in accord with the frequent holdings of this court that questions involving government must *not* be determined along technical lines, but on the basis that practical and broad considerations should control. Woodbridge v. City of Duluth, 121 Minn. 99, 140 N. W. 182; Evans v. City of St. Paul, 211 Minn. 558, 2 N. W. (2d) 35; Van Cleve v. Wallace, 216 Minn. 500, 13 N. W. (2d) 467. We should look to the substance rather than to the label in ascertaining legislative intent. Evans v. City of St. Paul, *supra;* 6 Dunnell, Dig. & Supp. § 8940. What did the legislature mean in declaring that "the comptroller of the city of Minneapolis" should be ex officio a member of the county board of tax levy? Was the label or title of "comptroller" used to express an intent that it should be applicable only to a regularly elected or appointed comptroller of recognized *de jure* status, or might it also apply to a *de facto* incumbent of that office? Where the words of a law are not explicit, the purpose or object to be attained may be considered in ascertaining the intended meaning. M. S. A. 645.16(4). The board of tax levy is a local taxing authority originally vested with the power and duties to fix maximum tax rates for the county and the various departments of the city of Minneapolis. In order that the board might discharge its duties wisely and in accord with the actual needs of the city and county and according to the ability of the taxpayers to pay, the legislature designated as its members, among others, the chief financial officer of both the city and the county, namely, the city comptroller and the county auditor. Undoubtedly the primary purpose was to insure that the board should have the benefit of the knowledge and the authoritative budgetary information possessed by these chief financial officers. Obviously, such authoritative budgetary information would be possessed by a city comptroller, whether he was *de jure* or *de facto*. It would indeed be a narrow construction in contravention of the legislative intent so to construe the statute as to deny to the board the benefit of expert budgetary information because the city comptroller had a *de facto* status. There is nothing in the statutes specifically requiring or justifying a narrow construction. The city comptroller, and

this is likewise true of any other member of the board, is an ex officio member, that is, by virtue of his office, and without further warrant or appointment. Clay County v. Simonsen, 1 Dak. 387, 46 N. W. 592; State v. Tilford, 1 Nev. 240; 15 Wd. & Phr. (Perm. ed.) 658. Each of the board members was described by his official title. The use of titles in referring to public officers is but a convenient method of designating particular individuals charged with the performance of the duties implied by the title. In the ascertainment of legislative intent, such title is not in and of itself controlling, but the duties involved in the possession of the office described by the title are controlling. State ex rel. Briggs v. McIlraith, 113 Minn. 237, 129 N. W. 377, and Evans v. City of St. Paul, 211 Minn. 558, 2 N. W. (2d) 35, *supra;* 6 Dunnell, Dig. & Supp. § 8940.

Respondent, as *de facto* city comptroller, is the officer charged with the performance of the duties contemplated by the legislature when it used the term "comptroller." Whatever may be the weakness in respondent's claim to legal title to the office of comptroller, he is comptroller in fact, and the *only* city comptroller of Minneapolis. As such, he is a *de jure* member of the board of tax levy as established by Sp. L. 1879, c. 338, as amended.

Writ discharged.

PETERSON, JUSTICE (dissenting).

This proceeding in quo warranto is a direct attack on respondent's title to the office of member of the board of tax levy. His title to the office depends upon whether he is comptroller of the city of Minneapolis. Respondent admits that a vacancy occurred in the office upon the death of the incumbent, O. J. Turner. Under the charter of the city of Minneapolis, the office should be filled by an appointment by the city council. See, State ex rel. Peterson v. Hoppe, 194 Minn. 186, 260 N. W. 215. Respondent not only disclaims any appointment by the city council to fill the vacancy, but asserts that the city council does not intend to make such an appointment, and that he is exercising the powers of the office of comptroller not under any appointment, but under a delegation to him by the city council of the powers of the office. He asserts that the city council's

failure to make an appointment to fill the vacancy is for the avowed purpose of enabling it to change, as often as it sees fit, the person who shall exercise the functions of the office of comptroller under similar delegation of the powers of that office.

There can be no doubt that an incumbent's title to a public office can be inquired into only in a direct proceeding by quo warranto instituted by the attorney general or by his consent. Ryan v. Hennepin County, 224 Minn. 444, 29 N. W. (2d) 385. In a collateral proceeding, sufficient inquiry may be made to determine whether or not the claimant holds under color of title, or, as it is said, to determine whether he is a mere intruder. In United States v. Alexander .(D. C.) 46 F. 728, the question was whether an order made by a territorial judge of Idaho after his successor had been appointed and qualified was valid. There, as here, there was no claim of right to the office, but only that the claimant exercised the powers thereof. It was claimed that no inquiry into the claimant's right to the office was permissible, not even one to determine whether he held under a claim of title thereto. The court said (46 F. 729) :

"* * * It is claimed that in this action we cannot look beyond the act of the officer, and investigate his title to the office, but that the order must be accepted as one made by a *de facto* officer, and as valid. This proposition, unconditionally accepted, would make valid the unauthorized proceedings of a mere intruder into an office; of any one who might assume, without the semblance of authority, to act, and thus leave us remediless against usurpation and the grossest injustice. While the question of strict title to an office can be inquired into and determined only by direct proceeding, and *while courts will not, in a collateral proceeding, make such investigation, they may and will make such inquiry as will establish the line between the mere intruder into an office and one holding it under some color of title, some semblance of right,—between him without any authority whatever and the de facto officer.*

"* * * We think the rule is that inquiry into the title to the office of a party acting therein may be pursued far enough, in any

case, to show whether or not he is a *de facto* officer, but further than this the investigation will not go in a collateral proceeding. The question here arises, what is a *de facto* officer? *Generally there must be found some color of title, some semblance of right, to the office, either by some election or appointment, though invalid, upon which the claim rests."* (Italics supplied.)

Such an inquiry here shows that respondent has no title to the office and no semblance thereof. He is an intruder in a true legal sense, having no right of any sort to the office and making no claim of such right.

In State ex rel. Peterson v. Hoppe, 194 Minn. 186, 260 N. W. 215, *supra,* we pointed out that the only way of acquiring title to the office of comptroller of the city of Minneapolis in case of a vacancy is by appointment by the city council in the manner provided in the city charter.

It is axiomatic that title to an office must rest upon election or appointment. Board of Education v. Civil Service Comm. 99 N. J. L. 106, 122 A. 807 (affirming 98 N. J. L. 417, 119 A. 875). As said in Ames v. Port Huron Log Driving and Booming Co. 11 Mich. 139, 147, 83 Am. D. 731, 735: "It is difficult to perceive by what process a public office can be obtained or exercised without either election or appointment." In 42 Am. Jur., Public Officers, § 90 (citing State ex rel. Worrell v. Peelle, 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228), the text reads: "* * * there can be no valid appointment to ·an office so long as the appointing power is not called into exercise." Here, there was neither an election nor an appointment.

In State ex rel. Briggs v. McIlraith, 113 Minn. 237, 129 N. W. 377, there was an *appointment in fact* by the appointing power. We there said (113 Minn. 241, 129 N. W. 379): "He [claimant of the office] was in possession of the office of city clerk, and discharging the duties thereof *under color of appointment * * *."* (Italics supplied.) That fact distinguishes that case, for the reason that the claimant there held the office under a claim of title created by an exercise of the appointive power. Here, there is not only no appointment, but disavowal of any intention to make one.

Courts have always exercised the power, as an incident to determining the validity of acts of public officers, of determining whether attempted delegations of official power were valid. Muehring v. School Dist. No. 31, 224 Minn. 432, 28 N. W. (2d) 655. Here, the attempted delegation by the city council to respondent of the powers of city comptroller is so clearly illegal as not to require any demonstration of that fact.

In short, there is neither claim nor basis for any claim by respondent of title to the office. The attempted delegation to him by the city council of the powers of the office and the exercise by him of the powers under such delegation are clearly illegal. Because that is true, I think we should make the writ peremptory.

