STATE of South Dakota ex rel. AURORA COUNTY, Beadle County, Bon Homme County, Brown County, Brule County, Charles Mix County, Clark County, Clay County, Corson County, Davison County, Day County, Dewey County, Edmunds County, Faulk County, Jackson County, Jerauld County, Jones County, Lincoln County, Lyman County, McCook County, McPherson County, Miner County, Minnehaha County, Moody County, Pennington County, Sanborn County, Spink County, Union County, Walworth County and Yankton County, all being political subdivisions of the State of South Dakota, Plaintiffs,

v.

CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT, BROWN COUNTY, South Dakota, the Honorable Eugene E. Dobberpuhl, Circuit Judge and the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Defendants.

No. 12420.

Supreme Court of South Dakota.

Argued June 20, 1978.

Decided Aug. 3, 1978.

Jeremiah D. Murphy, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, and Terence A. O'Keefe, of Siegel, Barnett, Schutz, O'Keefe & Jewett, Aberdeen, for plaintiffs.

Chester A. Groseclose, Jr., of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant Chicago, M., St. Paul & Pac. R. Co.

ZASTROW, Justice.

The plaintiffs petitioned this court asking that we assume original jurisdiction by writ of certiorari under SDCL 21–31. They allege that the Fifth Judicial Circuit Court, Hon. Eugene Dobberpuhl presiding, has exceeded its jurisdiction by hearing and entering a judgment in the tax appeals taken by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (railroad). This court issued a writ of certiorari directing the respondents to certify and transmit to this court the complete record of the tax appeals, File CIV. 77–502 and CIV. 77–503. The matter was heard upon oral argument on June 20, 1978.

The writ of certiorari is quashed and these proceedings dismissed.

The plaintiffs are political subdivisions and taxing districts within the state of South Dakota and the respondent railroad operates a railroad through each of the counties.

In South Dakota railroad operating property is centrally assessed for purposes of taxation by the Commissioner of Revenue (commissioner) and the assessment is equalized by the State Board of Equalization (board). SDCL ch. 10–28. After the assessment has been equalized, the Department of Revenue advises the county auditor of each county through which the railroad runs of the assessed valuation of the railroad's property. The county auditor applies the mill levy of the various taxing districts within the county against the valuation to determine the taxes owed by the railroad to each county.

If the railroad is aggrieved by the action of the board it has a right to appeal the assessment to the circuit court under SDCL 10–38–4, 10–11–43, 7–8–27, 7–8–29 and 7–8–30. See Chicago, M., St. Paul & P. R. Co. v. Bd. of Com'rs, 1976, S.D., 248 N.W.2d 386.

For the tax year 1969, the railroad sought to appeal the decision of the board to the circuit court of Brown County. The railroad served a "Notice of Appeal (1969 Assessment)" and Bond on Appeal, dated September 9, 1969, on Lowell Schmidt, then Commissioner of Revenue; Gordon Mydland, then Attorney General; and the Honorable Frank L. Farrar, then Governor of the state of South Dakota.

For the tax year 1970, the railroad sought to appeal the decision of the board to the circuit court of Brown County. The railroad served a "Notice of Appeal (1970 Assessment)" and Bond on Appeal, dated September 11, 1970, again on Lowell Schmidt, Commissioner of Revenue; Gordon Mydland, Attorney General; and the Honorable Frank L. Farrar, Governor.

The notice of appeal, bond on appeal and affidavit of service for each year were filed in the Circuit Court, Fifth Judicial Circuit, Brown County, South Dakota, on August 16, 1977, under title "In the Matter of the Appeal of Chicago, Milwaukee, St. Paul and Pacific Railroad Company from the Decision of the State Board of Equalization (South Dakota)" with the 1969 appeal being assigned file number "CIV. 77–502," and the 1970 appeal having file number "CIV. 77–503."

Pursuant to a stipulation between defendant railroad and the board dated September 21, 1977, circuit judge Eugene E. Dobberpuhl, on the same date, entered a

judgment regarding both appeals. In reliance upon the judgment, the Secretary of Revenue [1] on November 23, 1977, issued his recertification of value and repayment directive to each of the plaintiff counties. To comply with the judgment and the recertification of value and repayment directive, the plaintiffs will be required to make refunds to the railroad in the total amount of $341,508.96 plus interest, which to date has accrued to $133,000.00.

Plaintiffs raise two issues in their application for the writ of certiorari. First, they contend that the notice of appeal was not properly served upon a "member" of the board. Second, they contend that the railroad failed to perfect the appeals by the failure to file the notices of appeal and transcripts of the proceedings with the circuit court.

SDCL 10–2–1 provides:

"The state board of equalization shall consist of five members who are freeholders to be appointed by the Governor subject to confirmation by the state senate. The state is divided into five districts, each consisting of the same counties designated as Supreme Court districts by § 16–1–1. An elector from each district shall be appointed and not more than three shall be members of the same political party."

On September 9, 1969 and September 11, 1970, the members of the board appointed and acting under SDCL 10–2–1 were Tom Felker of Madison; Allen Wilson of Hot Springs; B. L. Christie of Mobridge; Ralph Mernaugh of Watertown; and Lawrence Hogrefe of Parkston, South Dakota.

In addition, SDCL 10–2–4 provides:

" * * * The commissioner of revenue shall be an ex officio member [of the State Board of Equalization] without voting powers and shall serve as secretary of said board. The facilities of the department of revenue shall be made available to the board."

Under SDCL 10–11–43 an appeal from the decision of the board may be taken:

"* * * [T]o the circuit court of the county in which property owned or controlled by them * * * is situated, and *which appeal shall be taken in the same form and manner as appeals are taken from the decision of the board of county commissioners to such court.*" (Emphasis added.)

SDCL 7–8–29 states the requirements for the appeal of a decision of the board of county commissioners and provides in part:

"Such appeal shall be taken within twenty days after the publication of the decision of the board by serving a written notice on one of the members of the board, when the appeal is taken by any person aggrieved by the decision of the board, * * *"

The railroad concedes that none of the five voting members of the board was served with copies of the notice of appeal for either 1969 or 1970. However, it asserts that service upon Lowell Schmidt, the Commissioner of Revenue and ex officio member of the board was adequate to confer jurisdiction upon the circuit court.

An "ex officio member" of a board has been defined as one who is a member by virtue of his title to a particular office without the necessity of a further warrant or appointment. *State v. Brandt,* 1948, 225 Minn. 345, 31 N.W.2d 5; *Barber Pure Milk Co. v. Alabama State Milk Control Board,* 1963, 275 Ala. 489, 156 So.2d 351; Black's Law Dictionary (4th Ed.) p. 661; 32A C.J.S. Ex Officio, pp. 851–852.

■ Unless their powers are restricted by statute, "ex officio members" are vested with the full power and authority to do any and all things necessary and essential to carry out the purpose of the law creating the board or body. *Seiler v. O'Maley,* 1921, 190 Ky. 190, 227 S.W. 141; *Louisville & Jefferson County Planning and Zoning Com'n v. Ogden,* 1948, 307 Ky. 362, 210 S.W.2d 771; *Barber Pure Milk Co. v. Alabama State Milk Control Board,* supra.

It is conceivable that a board or commission might be made up entirely of "ex officio members," that is, each member belonging to the board or commission by virtue of his election or appointment to another office.[2] However, it has been the common practice of the South Dakota Legislature to deprive ex officio members of the right to vote in board decisions.[3] Although, the deprivation of a board member's right to vote certainly reduces his influence upon the board, it does not, as plaintiffs contend, make him not a "member in the true sense," and merely a "secretary of the board." Had the legislature intended the commissioner to be only the secretary to the board, it would have designated him as the "ex officio secretary" as it has done with other boards.[4]

The legislature has clearly indicated that the commissioner was a "member" of the board, albeit, nonvoting. Therefore, service of the notices of appeal upon the commissioner satisfied the statutory requirement that they be served upon a "member of the [State] board" of equalization.

Although the notices of appeal were served upon the commissioner on September 9, 1969, and September 11, 1970, they were not filed with the clerk of the circuit court for Brown County until August 16, 1977. Furthermore, a transcript of the proceedings before the board has never been filed.[5] Plaintiffs contend that the filing requirements of SDCL 10–11–45, 7–8–27, 7–8–29 and 7–8–30 required that the judgment be set aside.

SDCL 10–11–45 provides:

"All appeals taken to the circuit court pursuant to § 10–11–43 or § 10–11–44 shall be docketed as other causes pending therein and the same shall be heard and conducted and determined as provided by §§ 7–8–30 and 7–8–31. All decisions of such boards of equalization affecting any party or parties appellant, may be included in one appeal."

SDCL 7–8–27 provides in part:

"* * * [T]here shall be allowed an appeal to the circuit court by any person aggrieved upon filing a bond with one or more sureties to be approved by the county auditor conditioned that the appellant will prosecute the appeal without delay and pay all costs that he may be adjudged to pay in circuit court. * * *"

SDCL 7–8–29 provides in part:

"Such appeal shall be taken within twenty days after the publication of the decision of the board by serving a written notice on one of the members of the board, * * * and the county auditor shall upon filing of the required bond and the payment of his fees, * * * make out a complete transcript of the proceedings of the board relating to the matter

---

2. This in fact was the prior makeup of the State Board of Equalization. Beginning with S.L. 1925, Ch. 115, Ch. II, art. VII, § 3, the State Board of Equalization consisted of the Secretary of Finance, Director of Taxation and the Assistant Director of Taxation (if one were appointed) or the Director of Audits and Accounts. All were technically "ex officio members" (although not referred to as such) with voting privileges.

By S.L. 1931, Ch. 96, § 2, the State Board of Equalization was composed of the Director of Taxation, the Assistant Director of Taxation and the State Auditor, all technically "ex officio members" with one vote.

Under S.L. 1943, Ch. 257, § 14, the State Board of Equalization consisted of the Secretary of Finance, Director of Taxation, State Treasurer, State Auditor and Commissioner of School and Public Lands, each having one vote, and obviously "ex officio" because their official position made them members of the Board.

Under S.L. 1955, Ch. 248, § 1, the State Board of Equalization consisted of the Secretary of Finance, Commissioner of Revenue, State Treasurer, State Auditor and Commissioner of School and Public Lands, each having one vote and obviously "ex officio."

Under S.L. 1957, Ch. 457, the present membership, including the "ex officio" nonvoting status of the Commissioner of Revenue was created.

3. See, e. g., SDCL 1–27–11, 3–12–48; 4–1–1; 4–5–13; 5–15–38; 37–3–8; and 38–10–9.

4. See, e. g., SDCL 34–3–4; 34–3–15. See also 7–10–1.

5. There is nothing in the record which would indicate that there was ever any hearing or proceedings before the Board on either of these appeals.

of its decision and deliver the same to the clerk of the courts."

SDCL 7–8–30 provides:

"Such appeal and transcript shall be filed by the auditor by the first day of the next term of circuit court, and shall· stand for trial at such term.

All appeals thus taken to the circuit court shall be docketed as other causes pending therein and the same shall be heard and determined de novo."

■ Since there is no "auditor" on the board, the responsibility of filing the notices of appeal and transcript of the proceedings would be with the officer of the board whose duties are comparable to the auditor's duties in relation to a county board of commissioners. Since the county auditor serves as the clerk to the county board of commissioners, SDCL 7–10–1, the comparable officer is the secretary to the board, i. e., the commissioner of revenue.

■ It is clear · that the commissioner failed to fulfill his duties as secretary of the board by failing to file the notice of appeal and transcripts of the proceedings. The question raised by plaintiffs is whether the appeal of a taxpayer should be dismissed because the secretary of the board failed to perform his statutory · duty. The question must be answered in the negative.

The requirement of a prompt filing and hearing of a tax appeal is for the protection of the taxpayer, who is entitled to a reasonably speedy determination of his tax liability. The duty of the secretary of the board to file the "complete transcript" is comparable to the duty of the clerk of courts to file the notice of appeal, clerk's fee and undertaking under SDCL 15–29–1 and 15–29–2. Although such requirements are necessary for the efficient functioning of the appellate court, the failure of the clerk or secretary to perform his duty does not effect the jurisdiction of the court.

"The appellant's failure to follow up his appeal  *  *  *  while it may be ground for dismissal, does not defeat the jurisdiction of the court or effect the computation of the period within which the appeal must be perfected; *nor does the failure of the clerk to do the acts required of him in connection with the appeal.*" 4A C.J.S. Appeal and Error § 454. (Emphasis added.)

Therefore, if appellant has properly taken and perfected the appeal within the statutory time limitation, the circuit court has jurisdiction of the appeal, and the failure of the secretary to perform his duties will not defeat that jurisdiction.

The appeal here is *taken* by service of the notice of appeal on a board member within twenty days of the decision. SDCL 7–8–29. This, we have held, was properly accomplished. The appeal is *perfected* by the filing of the bond and filing fee. SDCL 7–8–27 to 7–8–29. This was also accomplished by the railroad. Thus, the appeals were timely taken and perfected by the railroad.

■ Although the failure of an appellant to take the steps necessary to see that an appeal record is properly prepared and filed may result in a dismissal on the basis of abandonment, see *State v. Crawford,* 1953, 75 S.D. 35, 58 N.W.2d 620; *Olson v. Aldren,* 1968, 83 S.D. 385, 159 N.W.2d 926, it is not for a lack of jurisdiction. Plaintiffs have at no time asserted that the railroad ever abandoned its appeals.[6]

Plaintiffs assert that the filing requirement of SDCL 7–8–29 and 7 ·8–30 is the only method by which the counties would receive notice of the railroad's appeal from the assessment. They contend that the counties as a practical matter must have notice so they might budget for possible reductions in tax revenues brought on by court-ordered reassessments. However persuasive that argument may be, the South

6. The delay in filing was apparently the result of the railroad's and the Commissioner of Revenue's wait for a determination of the propriety of the 1969 appeal in the *Chicago, M., St. Paul & P. R. Co. v. Bd. of Com'rs,* 1976, S.D., 248 N.W.2d 386. When this court upheld the propriety of such an appeal, the Commissioner filed the notice of appeal and bond with the circuit court.

Dakota Legislature has not provided for formal notice of these appeals to the individual counties.

Plaintiffs argue that if the appeal had been promptly and properly filed in the circuit court by the commissioner the counties would have received notice by reports of the news media or some other unspecified methods. It is unlikely that the legislature would select such an unreliable method of giving notice to the counties if it was their intention that the counties receive notice.

■ Plaintiffs argue that this court in *Chicago, M., St. Paul and P. R. Co. v. Bd. of Com'rs,* supra, held that the counties were entitled to due process notice as provided by the legislature. That decision clearly held that where the Department of Revenue acts in centrally assessing property, the counties, being governmental subdivisions of the state, were not entitled to participation except as provided by statute. As pointed out in *Chicago, M., St. Paul and P. R. Co. v. Bd. of Comr's,* supra:

> " 'The power of the legislature in the control of counties and other political subdivisions is unrestrained by requirements of due process.' " 248 N.W.2d at 390.

Although plaintiffs raise many cogent reasons why they should have notice of an appeal from a central assessment by the Department of Revenue, defendant railroad should not suffer a dismissal of its appeal because the statute does not provide for notice to the counties. The mere possibility of notice to the plaintiffs under SDCL 7–8–29 and 7–8–30 would not justify this court in giving those statutes the broad interpretation urged by plaintiffs on the theory that they were intended to be a "due process" requirement.

■ We find nothing in SDCL 7–8–29 and 7–8–30 which indicates that the filing of the notice of appeal with the clerk was in any manner intended to serve as notice to the plaintiff governmental subdivisions.

It appearing that the railroad's tax appeals were properly before, and within the jurisdiction of, the Fifth Judicial Circuit Court, the writ of certiorari issued by this court is quashed and these proceedings dismissed. Let judgment be entered accordingly.

WOLLMAN and PORTER, JJ., and JONES and EVANS, Circuit Judges, concur.

JONES, Circuit Judge, sitting for DUNN, C. J., disqualified.

EVANS, Circuit Judge, sitting for MORGAN, J., disqualified.