Cynthia RIGGS, Appellant,

v.

AETNA INSURANCE COMPANY, Appellee.

No. 82–188.

District of Columbia Court of Appeals.

Argued Oct. 20, 1982.
Decided Jan. 12, 1983.

Margaret A. Beller, with whom Carolyn R. Just, Washington, D.C., was on brief, for appellant.

Gary A. Godard, Falls Church, Va., for appellee.

Before KERN, BELSON and TERRY, Associate Judges.

PER CURIAM:

Appellant seeks review of a judgment rendered by the trial court, without a jury, that appellant is not entitled to recover $25,000 under the terms of her Yachtsman insurance contract with appellee for the accidental sinking of appellant's houseboat, the *Cinnabar,* on the Potomac River on October 7, 1979. Appellant contends that the trial court erred in its finding that the *Cinnabar* was being chartered at the time of its sinking and in its conclusion that appellant was in violation of the "Private Pleasure Only" clause of the insurance contract, precluding appellant's recovery under the contract. We disagree and, accordingly, affirm.

I

At the time of the accident, appellant was living on the *Cinnabar,* a 1970 Kingcraft Houseboat, docked in the Washington Marina. Her Yachtsman Insurance Policy with appellee was in full force and effect and included the following clause:

1. Private Pleasure Only. All coverage under this policy shall terminate upon the chartering or hiring of the yacht for any purpose or upon the use of the yacht for other than private pleasure purposes unless the previous written consent of [the appellee] has been obtained.

Appellant was not licensed to operate the *Cinnabar* as a charter vessel. At the time of the accident, she was aware of the "Private Pleasure Only" clause.

Some time before September 19, 1979, appellant was approached by Eric Schear, a friend who lived on a similar neighboring houseboat, the *Tara.* Appellant knew that Schear had, at least occasionally, chartered the *Tara* for various excursions. Schear requested that appellant help him transport some members of a prospective charterer on a trip to Mount Vernon on October 7, 1979. In consideration, Schear offered to pay appellant $150 for gasoline and engine time expenses. Appellant orally agreed to this arrangement. She did not notify appellee of her agreement with Schear.

On September 19, 1979, Schear entered into a written agreement with Answering Service, Inc. (Answering Service) to transport 30 of its employees and spouses on the *Tara* and the *Cinnabar,* respectively, to and from Mount Vernon on October 7. Answer-

ing Service agreed to hire the two vessels, together with masters and crew provided by Schear, for a total of $750, of which $300 was paid to Schear upon signing the agreement with the balance payable to him on October 7. By the terms of the agreement, Schear was to be paid $600 for the *Tara* and $150 for the *Cinnabar*.[1] Appellant had no knowledge of the terms of this agreement nor did she sign it.

On October 7, the *Cinnabar* and the *Tara* set out for Mount Vernon. Appellant, with her son as crew, piloted the *Cinnabar*, carrying 13 members of the Answering Service party. Schear, piloting the *Tara*, carried the remaining 17 members. Although the river and weather conditions posed no problem as the vessels set out, they became increasingly violent as the vessels approached Mount Vernon. Just before arriving at Mount Vernon, in severely choppy waters, the *Cinnabar's* deck parted from its hull and the vessel sank. No one on the *Cinnabar* was seriously injured. Appellant never received any payment from Eric Schear.

By letter of October 26, 1979, appellee refused to pay appellant under her policy, alleging that appellant at the time of the accident was in violation of the "Private Pleasure Only" clause of her insurance agreement.

On April 10, 1980, appellant brought suit in Superior Court against appellee for breach of her insurance contract, seeking judgment for $25,000. After both appellant's motion for summary judgment and appellee's cross-motion for summary judgment were denied, this case came to trial in Superior Court on January 7, 1982.

At the trial, the parties stipulated that the facts, substantially as set forth above, were not in dispute; introduced joint exhibits, including depositions, recorded statements, the insurance contract and express stipulations of fact; called no witnesses,

and simply presented oral arguments. On January 20, 1982, the court entered judgment for appellee, finding that appellant was chartering the *Cinnabar* at the time of the accident, was therefore in breach of the "Private Pleasure Only" clause of her contract with appellee, and could not recover under her insurance contract. On February 10, 1982, appellant timely filed her notice of appeal.

II

Normally, when a case is tried without a jury, we will not set aside a trial court's judgment, except for errors of law, unless the judgment is plainly wrong or without evidence to support it. D.C.Code 1981, § 17–305(a); *see Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association,* D.C.App., 441 A.2d 956, 962 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 62, 74 L.Ed.2d 64 (1982); *Hartford Accident & Indemnity Company v. District of Columbia,* D.C.App., 441 A.2d 969, 974 (1982). Here, where the evidence consisted entirely of stipulated testimony, joint exhibits and other undisputed facts, we look to whether the stipulated evidence, and inferences fairly drawn from it, support the conclusions of law reached by the court. We find that they do.

In attacking the trial court's judgment, appellant asserts, *inter alia,* that her agreement with Schear was simply an expense sharing agreement between friends; that Schear had no authority to include the *Cinnabar* in his agreement with Answering Service without her knowledge and consent; that appellant was not engaged in carrying passengers for consideration at the time of the accident and that, in any case, she never received the $150 promised her; that the $150 was insufficient consideration in light of the $600 Answering Service agreed to pay Schear for the *Tara* for exactly the

---

1. The *only* reference in this agreement to the *Cinnabar* was Schear's handwritten footnote referencing the $600 fee for the Tara:

"* Plus $150 for the Cinnabar as a second boat."

same voyage, and that a decision[2] by the Coast Guard absolving her of any liability under 46 U.S.C. § 390a–d (Supp.IV 1980) was binding on the trial court. These claims are without merit.

 In maritime law, the term "charter" commonly means "to hire or lease a vessel for a voyage."[3] BLACK'S LAW DICTIONARY 214 (5th ed. 1979). Moreover, a charter agreement is simply a contract subject to the general rules and specifications of contract law. *See Travelers Indemnity Co. v. Gulf Weighing Corp.,* 352 F.Supp. 335, 348 (E.D.La.1972); G. Gilmore & C. Black, THE LAW OF ADMIRALTY § 4–1 (2d ed. 1975). It is well settled in this jurisdiction that under general contract principles contracts may be express or, where agreement is manifested by conduct, implied in fact. Both are formed by mutual manifestations of assent. *See Yasuna v. Miller,* D.C.App., 399 A.2d 68, 74 n. 14 (1979); *Richardson v. J.C. Flood Co.,* D.C.App., 190 A.2d 259, 261 (1963).

Here, both parties stipulated, in effect, that a valid express agreement existed between Schear and appellant for use of the *Cinnabar* to carry passengers in return for a stated consideration. Those stipulations, by themselves, support the trial court's finding that appellant had full prior knowledge of Schear's agreement with a charterer. Appellant also manifested her assent to Schear's proposal that her boat be used in connection with a charter agreement by delivering the *Cinnabar* for boarding by the 13 members of Answering Service, all strangers to her, and undertaking to carry them to Mount Vernon prior to the accident. Moreover, we also will not inquire into the adequacy of the $150 consideration since we find that, though arguably slight, it was legally sufficient to support appellant's promise. *See Hoffa v. Fitzsimmons,* 499 F.Supp. 357, 365 (D.D.C.1980); *Allen v. Allen,* D.C.Mun.App., 133 A.2d 116, 118 (1957).

Finally, appellant's contention that the Coast Guard's decision in its proceeding under 46 U.S.C. § 390a–d was binding on the court below is without merit. First, we observe that this decision was not properly before the trial court, nor is it properly before this court. Furthermore, appellee was not a party in the Coast Guard proceedings, and their result could have no res judicata or estoppel effect as to appellee. *See Lassiter v. District of Columbia,* D.C. App., 447 A.2d 456, 458–61 (1982); *Henderson v. Snider Bros.,* D.C.App., 439 A.2d 481, 485 (1981). *See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 34 (1982).

We are satisfied that the trial court properly considered the evidence before it, and that the evidence supported its judgment. Accordingly, the judgment on appeal is

*Affirmed.*

---

2. Appellant's counsel included with her brief here materials indicating that on February 1, 1980, the Coast Guard conducted a hearing to determine whether appellant was in violation of Coast Guard rules and regulations regarding the licensing, operation and manning of passenger-carrying vessels pursuant to 46 U.S.C. § 390a–g (Supp.IV 1980). The hearing examiner found no violation of this section and assessed no penalties against appellant. Although appellant's counsel referred in her closing argument before the trial court to the Coast Guard proceedings, no effort was made to introduce at trial any evidence concerning the nature or outcome of those proceedings.

3. Such a commonly used definition is especially appropriate here in light of the plain, nontechnical language of the "Private Pleasure Only" clause of the insurance contract.