*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-TX-0329

MEPT St. Matthews, LLC, *et al.*, Appellants,

v.

District of Columbia, Appellee.

Appeal from the Superior Court of the
District of Columbia
(2021-CVT-000674)

(Hon. John McCabe, Trial Judge)

(Argued January 31, 2023                    Decided July 20, 2023)

*Thomas T. Locke,* with whom *Renee B. Appel* was on the brief, for appellants.

*Arjun P. Ogale*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia (at the time the brief was filed), *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, were on the brief, for appellee.

Before Blackburne-Rigsby, *Chief Judge*, Deahl, *Associate Judge*, and Steadman, *Senior Judge*.

Blackburne-Rigsby, *Chief Judge*: In this tax case regarding a commercial real estate transaction, appellants are MEPT St. Matthews, LLC ("MEPT") and TFG 1717 Rhode Island Avenue Property, LLC ("TFG"). MEPT sold its "right, title,

interest, and obligations" in 1717 Rhode Island Avenue NW to TFG for $58,800,000. Appellants and the District of Columbia agree that MEPT and TFG are responsible for recordation and transfer taxes on this transaction. The dispute is how to calculate the taxes.

Appellants contend that they are only responsible for taxes based on the amount of consideration, or $58,800,000. The District contends that appellants are also responsible for taxes on the assignment of a leasehold interest in the property, the value of which is calculated separately. The difference is a sum of $1,933,934, which appellants paid under protest. The trial court granted summary judgment to the District, agreeing that the transaction encompassed two separate interests that must be taxed differently, pursuant to D.C. Code §§ 42-1103 & 47-903 (recordation and transfer tax statutes). We affirm the trial court's conclusion that, based on the plain language of these statutes, there were two separately taxable interests that comprised the real estate transaction. However, we remand for the trial court to address whether any of the $58,800,000 consideration can be attributable to the leasehold interest.

## I.     Factual Background

The Roman Catholic Archbishop of Washington is the owner of land at 1717 Rhode Island Avenue, NW.  In 2002, the Archbishop and MEPT entered into an agreement for the lease of the land to MEPT until December 1, 2099 ("the Ground Lease").[1]  MEPT constructed a 10-story office building ("the Improvements") upon the land as permitted by the Ground Lease, and MEPT was to be the owner of the Improvements until the end of the lease.

In December 2020, MEPT agreed to sell its "right, title, interest and obligations" in the property to TFG for $58,800,000.  Appellants contacted the D.C. Office of Tax and Revenue ("OTR") to determine the correct amount of recordation and transfer taxes on this transaction.  Appellants contended that the total taxable

---

[1] As we explained in *District of Columbia v. Design Ctr. Owner (D.C.) LLC*, 286 A.3d 1010, 1014 (D.C. 2022),

> A ground lease is an agreement between a landowner and (usually) a developer where, in exchange for rent payments, the landowner permits the developer to build improvements on the land and use it for a specific term of years, often decades.  At the end of the lease term, the landowner not only regains exclusive rights to the land but also acquires any improvements that remain.

value was the consideration for the sale, or $58,800,000. Appellants expected to pay $2,940,000 in recordation and transfer taxes.

In response, OTR told appellants that the $58,800,000 sale price would be subject to transfer and recordation taxes as the consideration for the Improvements; additionally, the Ground Lease would also be subject to recordation and transfer taxes, based on 150% of the assessed 2021 value of the land. *See* D.C. Code §§ 42-1103(a)(1)(B)(ii) & 47-903(a)(3). OTR's total valuation of the transaction was $97,478,685. By OTR's calculation, appellants were responsible for $4,873,934 in transfer and recordation taxes.[2]

Appellants paid the assessed transfer and recordation taxes under protest and then submitted a joint refund request of $1,933,934, which was denied. Appellants filed an appeal of the assessment in the superior court. Appellants and the District moved for summary judgment. The trial court granted summary judgment to the District of Columbia and denied summary judgment to appellants. The trial court agreed with the District of Columbia that "the sale of the Improvements and the transfer of the Ground Lease are separately taxable under the plain language of D.C.

---

[2] Appellants also paid $82,500 for non-exempt deeds of trust, which is not in dispute.

Code §§ 42-1103 and 47-903." The trial court highlighted that "MEPT sold both the Improvements and its interest in the Ground Lease to TFG." Appellants noted a timely appeal.[3]

## II.    Discussion

"Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury." D.C. Code § 47-3304(a). "This court reviews summary judgment rulings de novo. The court is to conduct an independent review of the record in considering whether the motion was properly granted.'" *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 630 (D.C. 2015) (internal quotation marks and citations omitted).

"Generally, when a deed is filed in the District of Columbia, the parties to the deed must pay transfer and recordation taxes." *Aziken v. District of Columbia*, 194 A.3d 31, 34 (D.C. 2018). "That act—submitting a deed for recordation—is what

---

[3] Shortly before oral argument, we decided *Design Center*, 286 A.3d 1010, which deals with similar questions of tax law. Consequently, we directed the parties to file supplemental briefs addressing whether *Design Center* was controlling or had any implications for the case here.

triggers the assessment of the two taxes, which are typically calculated as a percentage of the consideration paid for the transfer." *Design Ctr. Owner*, 286 A.3d at 1021. The center of this dispute is the proper interpretation and application of D.C. Code § 42-1103, the recordation tax statute, and D.C. Code § 47-903, the transfer tax statute, to appellants' real estate transaction.

We "generally review[] issues of statutory construction de novo, giving deference to the reasonable interpretation of the agency charged with implementing the statute, which, in this case, is OTR." *Bartholomew v. D.C. Off. of Tax & Revenue*, 78 A.3d 309, 316 (D.C. 2013) (citing *Wynn v. United States*, 48 A.3d 181, 188 (D.C. 2012)). "In interpreting tax statutes, we apply conventional principles of statutory construction." *1137 19th St. Assocs., Ltd. P'ship v. District of Columbia*, 769 A.2d 155, 161 (D.C. 2001) (citation omitted). "Consequently, 'we must look first to the language of the statute and, if it is clear and unambiguous, give effect to its plain meaning.'" *Id.* (quoting *District of Columbia v. Acme Reporting Co.*, 530 A.2d 708, 712 (D.C. 1987)). "In doing so, 'effect must be given every word of a statute[,] and interpretations that operate to render a word inoperative should be avoided.'" *Id.* (quoting *Acme Reporting Co.*, 530 A.2d at 713). "If we determine that the statutory language is facially ambiguous, we may then consider 'the legislative history surrounding the enactment of the statute [ ] in question for

assistance.'" *Id.* (quoting *Acme Reporting Co.*, 530 A.2d at 713); *see also Expedia, Inc.*, 120 A.3d at 631 ("Interpreting tax laws is a three-step process: if the court is confronted with ambiguity on the face of the statute, step two is to turn to the legislative history and the other tools of reasonable statutory construction, and—if the ambiguity persists—step three is to construe the statute strictly against the state and in favor of the taxpayer.").

As to the recordation tax, the relevant provisions state:

> (a)(1) At the time a deed, *including a lease or ground rent for a term (with renewals) that is at least 30 years*, is submitted for recordation, it shall be taxed at the rate of 1.1% (to complete the calculation of total recordation tax due at time of recording, see also additional tax in subsections (a-4) and (a-5) of this section), as follows:

> (A) A deed that conveys title to real property in the District shall be taxed at a rate of 1.1% (to complete the calculation of total recordation tax due at time of recording, see also additional tax in subsections (a-4) and (a-5) of this section) applied to the consideration for the deed; provided, that if there is no consideration for a transfer or if the consideration for the transfer is nominal, the rate shall be applied to the fair market value of the real property, as determined by the Mayor.

> (B)(i) *If there is a lease or ground rent for a term (with renewals) that is at least 30 years, the recordation tax shall be based upon the average annual rent over the term of the lease*, including renewals, capitalized at a rate of 10%, plus any additional consideration payable; provided that the amount to which the rate is applied shall

not exceed the fair market value of the real property covered by the interest transferred.

      (ii) *If the average annual rent of the lease or ground rent for a term (including renewals) that is at least 30 years cannot be determined, the recordation tax will be based on the greater of:*

           (I) One hundred and five percent of the minimum average annual rent ascertainable from the terms of the lease, capitalized at a rate of 10%, plus any additional consideration payable; or

           (II) *One hundred and fifty percent of the assessed value of the real property covered by the interest transferred.*

D.C. Code § 42-1103 (emphasis added). As to the transfer tax, the relevant provisions state:

(a)(1) There is imposed on the transferor for each transfer at the time the deed is submitted to the Mayor for recordation a tax at the rate of 1.1% of the consideration paid for the transfer; *provided, that*:

(A) *If the interest in real property transferred is a lease or ground rent for a term (including renewals) that is at least 30 years, the transfer tax will be computed using the value determined in accordance with paragraphs (2) or (3) of this subsection*; . . . .

(2) *If there is a lease or ground rent for a term (including renewals) that is at least 30 years*, the transfer tax shall be based upon the average annual rent over the term of the lease, including renewals, capitalized at a rate of 10%, plus any additional actual consideration payable; provided, that the amount to which the rate is applied shall not exceed

the fair market value of the real property covered by the interest transferred.

(3) *If the average annual rent of the lease or ground rent for a term (including renewals) that is at least 30 years cannot be determined, the transfer tax will be based on the greater of:*

    (A) One hundred and five percent of the minimum average annual rent ascertainable from the terms of the lease, capitalized at a rate of 10%, plus any additional consideration payable; or

    (B) *One hundred and fifty percent of the assessed value of the property covered by the interest transferred.*

D.C. Code § 47-903 (emphasis added). "Deed" is construed broadly as

any document, instrument, or writing (other than a lease or ground rent for a term (including renewals) that is less than 30 years), regardless of where made, executed, or delivered whereby any real property in the District, or any interest therein (including an estate for life), is conveyed, vested, granted, bargained, sold, transferred, or assigned.

D.C. Code § 47-901(3). Therefore, "any time parties execute any instrument by which any interest in real property is 'conveyed, vested, granted, bargained, sold, transferred, or assigned,' they must record a copy of that instrument with the District and pay the appropriate transfer and recordation taxes, unless a statutory exemption applies." *Design Ctr. Owner*, 286 A.3d at 1022.

We examined these same D.C. tax statutes recently in *Design Center*. There, the purchase agreement apportioned $76 million for consideration for the sale of the land, and then apportioned $174 million to the early termination of ground leases on the land. 286 A.3d at 1017. The ground leases had 17 years left in their term. *Id.* at 1018. The taxpayers reported and paid taxes only on the consideration paid for the land ($76 million)—not on the consideration for early termination of the ground leases ($174 million). *Id.* at 1017. In that case, the taxpayers took the position that only the consideration paid for the land itself, and not the consideration paid for the termination of the ground leases, was taxable. *Id*. at 1019. On the other hand, the District sought to tax the entire $250 million, arguing that, in reality, the buyer was acquiring fee simple title to the land and all of its improvements. *Id.* at 1020. We "largely agree[d] with the District's view," noting that the taxpayers' interpretation "d[id] not reflect reality" and "ignore[d] a massive taxable transfer of property interests that occurred in this transaction." *Id.*

Appellants argue that the District was trying to tax only the consideration in *Design Center*, but here, the District is trying to go even further by creating a "fiction" of dividing the deed into different interests, thus inflating the value of the transaction. In response, the District argues that *Design Center* confirms that transfer and recordation taxes are applied to each type of property interest in a

transaction. According to the District, "the correct method to compute transfer and recordation taxes is by examining the relevant deed, determining the distinct property interests that the deed transfers, and computing the taxes for each transfer under the provision that applies to the given property interest." The District contends that, just as the *Design Center* taxpayers failed to account for the reversionary interest in the improvements, appellants here overlooked the transfer of the leasehold interest which, pursuant to the D.C. tax statutes, is not taxed based on consideration.

We agree with the District's interpretation. Though the real estate transaction in *Design Center* is factually distinguishable, the general proposition that each separate interest transferred is taxable, regardless of how a real estate deal is structured or how the transfer is effected, applies here.[4] As we explained, "the District's transfer and recordation tax statutes apply broadly to any instrument used to convey 'any real property in the District, *or any interest therein*.'" *Design Ctr. Owner*, 286 A.3d at 1023 (quoting D.C. Code § 47-901(3)). Overall, we concluded that, whatever the structure of transaction and the mechanism of the transfer, the

---

[4] Indeed, the facts were more complicated in *Design Center*, as the ground leases there were for only 17 years. We explained that "a typical ground lease, or the termination or assignment thereof, is not taxable *so long as less than 30 years remain on the term*." *Design Ctr. Owner LLC*, 286 A.3d at 1019 (emphasis added). Here, it is undisputed that the Ground Lease has over 70 years left in its term.

reality was that it contained separate interests that were each subject to taxation. *Id.* at 1020-21.

Based on the statutes, the transfer and recordation taxes must be applied to the individual interests contained within each deed. The transfer tax provision states that the tax is based on "consideration paid for the transfer; *provided, that* . . . [i]f the interest in real property transferred *is a lease or ground rent . . . that is at least 30 years*," additional computation is needed. D.C. Code § 47-903(a)(1)(A) (emphasis added). Similarly, the recordation tax provision states that "[a]t the time a deed, *including a lease or ground rent for a term . . . that is at least 30 years*, is submitted for recordation, it shall be taxed . . . as follows . . . ." D.C. Code § 42-1103(a)(1) (emphasis added). Both statutes then go on to state that the tax must be based on either the average annual rent or, if that amount "cannot be determined," the greater of either "[o]ne hundred and five percent of the minimum average annual rent ascertainable from the terms of the lease, capitalized at a rate of 10%, plus any additional consideration payable" or "[o]ne hundred and fifty percent of the assessed value of the real property covered by the interest transferred." D.C. Code § 42-1103(a)(1)(B)(ii); *see also* D.C. Code § 47-903(a)(3).

We find no support for appellants' interpretation that these provisions are meant to tax only the *creation*, and not the assignment, of ground leases. The statutes do not distinguish between "assignment" and "creation."[5] Additionally, the transfer statute states that "each transfer" is taxable, D.C. Code § 47-903(a)(1), and a "transfer" includes an "assigned" interest, D.C. Code § 47-901(9). Similarly, the recordation statute states that a "deed" shall be taxed upon being submitted for recordation, D.C. Code § 42-1103(a)(1), and a "deed" can be "any document, instrument, or writing" pursuant to which an "interest . . . is . . . assigned," D.C. Code § 42-1101(3)(A)(i).

Based on the plain language of the statute and the reasoning of *Design Center*, it is of no matter that MEPT transferred the entirety of its interests, including a leasehold interest, via one deed. The reality is that there were two separate interests being transferred: (1) title to the Improvements and (2) leasehold interest in the land

---

[5] It is true, as appellants point out, that other states tax the assignment of leasehold interests differently. In Virginia, assignments of leasehold interest are generally not taxable. *See* 23 Va. Admin. Code 10-320-80 ("An assignment of a lease on which the recordation tax has been previously paid is generally not subject to tax under the provisions of § 58.1-807 of the Code of Virginia if there is no increase in the amount of the principal obligation."). In New York, an assignment of a leasehold interest is generally taxed based on the consideration for the assignment—not on rent. *See* N.Y. Comp. Codes R. & Regs. Tit. 20 § 575.7(d). But the relevant provisions actually include language to that effect, unlike the D.C. tax statutes.

(or the Ground Lease). Pursuant to the statutory text, OTR first taxed the $58,800,000 as consideration for the Improvements. *See* D.C. Code § 47-903(a); D.C. Code § 42-1103(a)(1)(A). OTR next determined that, given the transfer of the Ground Lease of over 70 years (well over 30 years), it must tax that interest separately. *See* D.C. Code § 42-1103(a)(1)(B)(i); D.C. Code § 47-903(a)(1)(A). OTR concluded that there was no ascertainable average rent. Therefore, OTR calculated the transfer and recordation taxes based on "150% of the assessed [2021] value of the Land." *See* D.C. Code § 42-1103(a)(1)(B)(ii); D.C. Code § 47-903(a)(3)(B).

If the "plain meaning of statutory language is clear and unambiguous and will not produce an absurd result, we will look no further." *Hargrove v. District of Columbia*, 5 A.3d 632, 634 (D.C. 2010) (quotation marks and citation omitted). OTR's application of the transfer and recordation tax statutes comports with the plain language of the statute and the reality of the transaction. To interpret otherwise would be to read out the ground lease provision in each statute.[6]

---

[6] Additionally, the District also persuasively frames the policy behind these provisions, as a "ground lease typically transfers for a de minimis upfront value, if any, because changing who owes the future lease payments is the consideration for the transfer . . . . To accurately capture the taxable value associated with a ground

This leaves the question of whether any of the $58,800,000 reflected the value of the Ground Lease such that appellants may have been overtaxed. *See* D.C. Code § 47-903(a)(1) (transfer taxed "at the rate of 1.1% of the consideration paid for the transfer"); D.C. Code § 42-1103(a)(1)(A) (recordation taxed at a rate of 1.1% "applied to consideration for the deed").

Appellants maintain that part of the $58,800,000 was for the transfer of the Ground Lease.[7] The District contends that the $58,800,000 did not account for any value of the Ground Lease and, in support, cite to an appraisal of $59,100,000, which the District contends reflects the value of only the Improvements.

The appraisal refers to the "subject" as the "ten-story office building in very good condition," but it also refers to the Ground Lease repeatedly. The purchase agreement refers to both the Ground Lease and the Improvements. The trial court

lease transfer, District law looks to the rent due under the lease (plus any other consideration paid) or a reasonable proxy thereof."

[7] In appellants' joint Claim for Refund, they similarly argued that the $58,800,000 encompassed "all interests, . . . including but not limited to MEPT's interests in a long-term ground lease and building improvements."

explained that "the total transaction was worth far more than the $58,800,000 paid by TFG to MEPT . . . [as] not only was MEPT receiving the $58.8 million dollars, it was being released from any further liability under the Ground Lease." Additionally, the trial court noted that TFG's statements before the D.C. Real Property Tax Commission support the proposition that "the Improvements have a value separate and apart from the Land." However, the trial court was merely recognizing that the value of a leasehold interest is often not captured in consideration. It made no factual findings on this issue.[8]

The trial court did not address whether any of the consideration here was paid for the Ground Lease. The trial court may conclude that it can resolve this question on the current record or it may need to reopen discovery to resolve the issue. *E.g.*, *Design Ctr. Owner*, 286 A.3d at 1024 n.10. Therefore, while we affirm the trial court's conclusion that there were two separately taxable interests here, we remand the case for the trial court to address this narrow factual question of whether any of the $58,800,000 was for the transfer of the Ground Lease.

---

[8] Nor did the trial court rely on "release of liability" or appellants' past statements in granting summary judgment to the District. Therefore, we do not address appellants' arguments regarding judicial estoppel or "release of liability."

### III.   Conclusion

In sum, we affirm the trial court's grant of summary judgment to the District of Columbia.  Based on the plain language of the D.C. tax statutes, the sale of the Improvements and the transfer of the Ground Lease were separately taxable.  *See* D.C. Code §§ 42-1103(a)(1)(B) & 47-903(a)(3).  However, we remand the case for the trial court to address the narrow factual question of whether any of the consideration was attributable to the Ground Lease.

*So ordered.*