SCHOOL STREET ASSOCIATES
LIMITED PARTNERSHIP,
et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 97–TX–1442.

District of Columbia Court of Appeals.

Argued Nov. 16, 1998.

Decided Feb. 25, 1999.

Ralph A. Taylor, Jr., with whom Anne Marie Longobucco, Washington, DC, was on the brief, for appellants.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, for appellee. Jo Anne Robinson, Principal Deputy Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Martin B. White, Assistant Corporation Counsel, were on the brief for appellee.

Before STEADMAN and REID, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Appellant School Street Associates ("School Street") is a limited partnership investing in District real estate.[1] In contrast to federal law, such partnerships are taxed on their income in the District as distinct taxable entities. In this appeal, we are called upon to determine whether School Street is entitled to take the deduction provided in D.C.Code § 47–1803.3(a)(14) (1996). This code section in general allows a deduction for a net operating loss (NOL) that may be taken in a year prior to or subsequent to the year the loss was actually realized.[2] We hold that School Street, as an "unincorporated business," is entitled to the benefit of the deduction by a straightforward reading of

1. School Street is joined in this appeal by several tiers of partners of the business itself, including School Street's own general partners, First City Properties—E Street, Inc. and Boston School Associates Limited Partnership; Boston School Associates Limited Partnership's general partner Boston School Associates; and Boston School Associate's general partners, Mortimer B. Zuckerman and Edward H. Linde.

2. In principle, the concept is a simple one. If a business loses $10,000 in one year and the next

the statute itself in light of the overall structure of District tax law.[3]

## I.  Background

### A.  Overview of Tax Structure

To understand the provision of the District tax code at issue, it may be useful to establish a sense of the District tax code's overall structure and its contrast to the federal tax structure. Individuals, corporations, and unincorporated businesses are all separately subject to taxation under Title 47, Chapter 18 of the D.C.Code. A corporation includes trusts, associations, and companies that are classified as corporations under the federal Internal Revenue Code, and also includes financial institutions. D.C.Code §§ 47–1801.4(16), –1807.1(1) (1996). An unincorporated business is sweepingly defined as any trade or business conducted or engaged in by any non-corporate entity, with four express exceptions. D.C.Code § 47–1808.1 (1996). The most significant are the exceptions for a trade or business in which more than 80% of the gross income is derived from personal services and in which capital is not material, and for "professional corporations" under D.C.Code § 29–601 et seq. (1996), such as law firms, accounting firms, engineers, and medical practitioners. Such excepted trades or businesses are treated as "pass-through" entities. "Pass-through" enterprises are those for which losses or gains are not recognized by the entities themselves, but are allocated to the incomes of the organizations' owners in their capacity as individual taxpayers.

By comparison, the federal Internal Revenue Code of 1986 ("IRC") defines income tax in Subtitle A, Chapter 1, Subchapter A, which establishes a separate tax for individuals (Part I) and for corporations (Part II).

year earns a profit of $20,000, its net taxable income in the second year would only be $10,000. Thus, the concept spreads out, so to speak, profits and losses over a longer period than a single tax year.

3. We therefore do not reach School Street's additional arguments that an alternative interpretation would both be unconstitutional and violate the District's Home Rule Act.

26 U.S.C.A. §§ 1, 11 (1998). How other structures will be treated within this essential framework is addressed elsewhere throughout the IRC. Most relevantly, Subchapter K, which covers partnerships, indicates that businesses taking this form are treated as pass-through entities for their principals. 26 U.S.C.A. §§ 701–02 (1998). These partnerships nonetheless file informational returns under the IRC indicating business performance. 26 U.S.C.A. § 6031(a) (1998).

In the District, individuals are taxed on personal income, while all taxable business entities are levied a franchise tax against the entity's income "for the privilege of carrying on or engaging in any trade or business within the District." D.C.Code §§ 47–1807.2(a), –1808.3(a) (1996). "Income" for all categories of taxpayers is defined in detail in subchapter III. Subchapter VII establishes the franchise tax for corporations and financial institutions; subchapter VIII establishes the franchise tax on unincorporated businesses. Subchapters VII and VIII are in many respects parallel, and both indirectly refer to subchapter III for a definition of taxable income.[4] D.C.Code §§ 47–1807.1(2), –1808.2(1) (1996). To avoid double taxation for unincorporated business activity, "the distributive share of a trade or business net income that is subject to the unincorporated business franchise tax" is excluded from calculation of an individual owner's gross income. D.C.Code § 47–1803.2(a)(2)(D) (1996). The structure of a business in the District, incorporated or unincorporated, typically will not have significant local tax consequences insofar as the business itself is concerned because both classifications are treated similarly by the District tax code. Regulations support this intent, explaining that

> "the design of the unincorporated business tax under the law is to impose a tax upon all business income which would be subject to the corporation franchise tax (as though the business were incorporated), without regard to whether the business is carried on by an individual, a partnership, or some

other unincorporated entity." 9 DCMR § 117.1 (1996).

Prior to 1987, no business, whether incorporated or not, could take advantage for District tax purposes of a net operating loss in one year by applying it against profits in another year. However, in 1987, in an effort to bring the District tax law into greater conformity with the IRC without any overall increase in District taxes, the D.C. Council enacted the Tax Conformity and Revision Amendment Act ("the Act"). Among its other numerous provisions, that Act added to the list of income deductions set forth in D.C.Code § 47–1803.3(a) the following new deduction:

> (14) Net operating losses.—In computing the net income of a corporation, an unincorporated business, or a financial institution, there shall be allowed a deduction for net operating losses, in the same manner as allowed under § 172 of the Internal Revenue Code of 1986 and as reported on any federal tax return for the same taxable period.

The interpretation of D.C.Code § 47–1803.3(a)(14) (1996) and its interaction with the IRC is the issue debated by the parties and now before us for resolution on this appeal.

### B. School Street's Facts

School Street is a District of Columbia limited partnership that meets the statutory definition of an unincorporated business under D .C.Code § 47–1808.1 (1996). As such, it is subject to the District's franchise tax, although it serves only as a pass-through entity under the federal tax scheme. The partnership primarily is owned by non-residents of the District; however, it derives all of its revenue from activity within the District, specifically through operation of real estate located at 500 E Street, SW. Between 1982 and 1991, School Street suffered net operating losses totalling $6,079,396. In 1992, School Street generated positive income, and claimed a forward rolling deduction of its prior losses against this income pursuant to its reading of § 47–1803.3(a)(14).

---

4. Subchapter X, referenced in both franchise tax sections of the Code, defines "taxable income" based on the definition of net income in subchapter III.

In 1994, the District of Columbia Department of Finance and Revenue notified School Street that it was disallowing the NOL deduction. School Street petitioned for review in the Tax Division of the Superior Court. Both parties argued for summary judgment in their favor based solely on the legal question of statutory interpretation.[5] The court accepted the District's argument that § 47–1803.3(a)(14) is not applicable to such unincorporated businesses because of what the District reads as limiting references in the subsection to the federal tax code. School Street appeals that ruling.

## II. Analysis

■ We initially take note of several principles to guide our mode of review. "Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury." D.C.Code § 47–3304(a). *See District of Columbia v. Acme Reporting Co.*, 530 A.2d 708, 711–12 (D.C.1987). Although the Tax Court is a particularized tribunal, "'regard for the special function and competence of the Tax Court does not warrant avoiding our responsibility of reaching a decision of our own.'" *Id.* at 712 (quoting *District of Columbia v. Seven–Up Washington, Inc.*, 93 U.S.App.D.C. 272, 275, 214 F.2d 197, 200 (1954)).

■ In addition, we owe a level of deference to the Department of Finance and Revenue's interpretation of its governing statute. *Columbia Realty Venture v. District of Columbia Rental Hous. Comm'n.*, 590 A.2d 1043, 1046 (D.C.1991). Nonetheless, that interpretation only "should be followed when it 'is reasonable and does not contravene the language or legislative history of the statute.'" *District of Columbia v. Pierce Assocs., Inc.*, 462 A.2d 1129, 1130 (D.C.1983) (citations omitted).

Finally, while typically "we focus on the 'settled rule that tax laws are to be strictly construed against the state and in favor of the taxpayer,'" *Acme Reporting Co., supra*, 530 A.2d at 712 (quoting 3A SUTHERLAND,

STATUTES AND STATUTORY CONSTRUCTION, § 66.01), the Supreme Court has differentiated deductions from other sorts of tax provisions under "the 'familiar rule' that 'an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer.'" *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (quoting *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943)) (other citations omitted). We observe, however, that the "deduction" before us is somewhat unusual in its quality not as one of "legislative grace" for a particular type of expenditure but rather of an equalizing out of income over a period of more than one year.

■ In sum, we recognize that School Street maintains the burden of proving entitlement to a deduction, while concurrently acknowledging that we cannot uphold the District's interpretation if it strains the language and legislative meaning of the Code.

## A. Plain Language

On its face, § 47–1803.3(a)(14) is straightforward. Its language, again, is as follows:

In computing the net income of a corporation, an unincorporated business, or a financial institution, there shall be allowed a deduction for net operating losses, in the same manner as allowed under § 172 of the Internal Revenue Code of 1986 and as reported on any federal tax return for the same taxable period.

■ School Street urges us to read the provision as it seems naturally to flow; net operating loss deductions "shall be allowed" to "an unincorporated business" and the rules for calculating and applying the deduction are governed by the section of the federal IRC later referenced in the same provision and consistent with amounts reported on federal tax returns. School Street argues that the reference to IRC § 172 merely governs technical rules of computation, focusing on the language "in the same manner." Thus

---

**5.** The District originally countered School Street's initial motion for summary judgment by alleging that the losses reported on federal returns did not match those reported to the District. At this point in the proceedings, however, neither party asserts a material factual dispute.

the second clause of the provision, rather than effectively mooting the deduction for unincorporated businesses as the District contends, elaborates upon how it is to be implemented, in a "manner" modeled on a mechanism already set out in the federal code.[6] Such a reading has the benefit of harmonizing all portions of the statute by viewing the clause as providing restrictions as to how, but not as to whom, the deduction is granted. *Maiatico v. United States,* 112 U.S.App.D.C. 295, 302 F.2d 880, 886 (1962) ("It is our duty whenever possible to reconcile provisions of varying statutes when and to the extent that conflict may appear.") School Street's reading also is consistent with this court's prior interpretation of references to other statutes as a "shorthand" for outlining procedures without requiring an absolute conformity that would render a portion of the primary statute inoperable. *Accord Floyd E. Davis Mortg. Corp. v. District of Columbia,* 455 A.2d 910, 912–13 (D.C. 1983). School Street's interpretation of § 1803.3(a)(14) satisfies the taxpayer's burden that it locate the applicable provision in the statute upon which it bases its deduction, and demonstrate that it comes within the terms of the provision. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

■ On the other hand, we think the government's proffered reading of § 47–1803.3(a)(14), followed by the Superior Court, impermissibly distorts the plain meaning of the statute. The District primarily relies on the second clause of the statute, "in the same manner as allowed under § 172 of the Internal Revenue Code of 1986." The District interprets this language as critically modifying, indeed essentially nullifying, the grant of the NOL deduction to "unincorporated business" in the first clause, because NOL deduc-

tions are not "allowed" to unincorporated entities under the federal scheme.[7] One problem is that § 172 itself does not in fact contain any provision that determines the entity which is entitled to take an NOL but simply prescribes the procedures for determining and applying the NOL. Even more importantly, that reading would force us to assume the inclusion of the words "unincorporated businesses" in § 47–1803.3(a)(14) was error or was essentially superfluous.[8] Common rules of statutory construction require us to avoid conclusions that effectively read language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute. *Tuten v. United States,* 440 A.2d 1008, 1010 (D.C.1982), aff'd, 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983); *Tri–State Motor Corp. v. Standard Steel Car Co.,* 51 App. D.C. 109, 276 F. 631, 632 (1921) ("... it is the duty of the court ... to harmonize and sustain, not destroy.") Additionally, the omission of exempted partnerships from the list of entities granted deductions for NOLs suggests the inclusion of all separately taxed unincorporated businesses was deliberate and meaningful.

The District also notes that NOL deductions themselves are not actually taken on federal partnership tax returns, but rather are passed through to be utilized by the individual partners. Thus, the government argues, School Street cannot satisfy what it reads as the statutory requirement that NOL deductions must be "as reported on any federal tax return for the same taxable period." This is the District's best textual argument and is not without some force. When read in its full context, however, "as reported" might modify either "deduction" or "losses." While the structure of the clause is complex, the latter reading preserves a more harmonious

---

6. The final requirement that the net operating losses deducted be reported on federal tax returns for the same taxable period (which may extend over several years) ensures that their amounts are consistent for both District and federal purposes, without ascribing to whom the losses are attributable for tax purposes.

7. The reason such deductions are not allowed under the IRC was elucidated earlier; under the federal rules, all partnerships as well as individu-

ally owned unincorporated businesses are pass-through vehicles, and as such there is no taxable income flowing to the business entity itself against which to apply the deduction.

8. The District suggested at oral argument that certain unusual forms of unincorporated business entities are taxed as corporations under the federal law, but this is not demonstrated to be anything more than *de minimis.*

interpretation of the statute in its entirety. As School Street notes, losses themselves are reported on the federal return of income filed by a partnership as well as the individual returns of the partners. Supporting this approach is the breadth of the language "any" tax return for the "same taxable period."[9] Further, when treated as terms of art, deductions typically are "allowed" or "taken," as opposed to losses, which, like income gains, are "reported." Throughout the District's tax code, these terms are used in accordance with this standard accounting meaning.[10]

Thus, on its face and in accord with the natural reading of its language, the statute appears to provide the NOL deduction consistently across the board to all organizations taxed at the entity level, in accord with the District's decision to treat not only corporations but unincorporated businesses as separate tax entities. The District's proposed treatment of NOLs as a single exception to the approach is, in our view, a reading too strained to be accepted.

### B. Legislative Intent

■ Some attempt to decipher legislative history may also be appropriate in tax cases, " 'since the obligation to pay taxes arises only by force of legislative action.' " *District of Columbia v. Acme Reporting Co., supra,* 530 A.2d at 712 (quoting 3A Sutherland § 66.03). School Street's reading appears to fairly reflect the legislative intent, insofar as it can be divined from the available record. As already mentioned, the provision allowing deductions for NOLs was included in an extensive 1987 enactment in an effort to bring the District's tax code into greater conformity with the IRC while simultaneously ensuring that District income taxes would not increase overall. Report of the Committee on

Finance and Revenue on Bill 7–183, "District of Columbia Income and Franchise Tax Conformity and Revision Amendment Act of 1987" ("the Committee Report"), at 1 (May 14, 1987). The NOL deduction was one of several provisions that were meant to offset the revenue increases that would be generated by other changes in the tax code: "The revenue gain is returned by [inter alia] . . . creating a net operating loss deduction under the franchise tax." Committee Report, *supra,* at 1. Additionally, the Committee Report discusses "reducing the franchise sur-tax." Throughout the Report, the Committee treats "the franchise tax" as a single concept, without differentiating between the tax against corporations and that against unincorporated businesses, suggesting that the effect of changes to the tax would be the same in all instances.

■ We also know from the relevant regulations that generally the District expects to treat incorporated and unincorporated businesses alike. 9 DCMR § 117.1, *supra; see also* 9 DCMR § 119.2 (1996) (". . . an unincorporated business is generally entitled to allowable deductions from gross income to the same extent that would be allowable if the business were incorporated."). While regulations are not controlling for statutory interpretation, they do shed light on the background into which the legislation is to fit.

The District points out that businesses made a subsequent attempt to amend the statute in 1994 to explicitly offer NOL deductions to unincorporated businesses and S-corporations. From this fact, the District infers that the original statute was not meant to provide unincorporated businesses with NOL deductions. However, the urged amendment could just as easily have been an

---

9. Even if the deduction amount itself must appear on some federal tax return, it will presumably appear in the aggregate on the individual partners' returns for the years in question, if only as an offset to other income. The fundamental problem with the District's approach is that it would read the clause as requiring that the NOL deduction be actually taken for federal income tax purposes by the unincorporated business itself in the same tax year, a reading that the clause will not fairly bear.

10. *See, e.g.,* D.C.Code § 47–1801.3 (1996) ("Such portion of such person's income . . . shall be reported . . ."); D.C.Code § 47–1803.3(a) (1996) ("The following deductions shall be allowed . . ."); D.C.Code § 47–1804.3 (1996) ("The deductions and credits provided for in this chapter shall be taken . . .").

attempt to clarify the current statute, and reinforce a constituency's preferred interpretation. *United States v. Wise,* 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962) ("Logically, several equally tenable inferences could be drawn from the failure of the Congress to adopt an amendment in the light of the interpretation placed upon the existing law by some of its members, including the inference that the existing legislation already incorporated the offered change"). Regardless, even if the legislature intended to rebuff the proffered amendment, "we have heeded the admonition of the Supreme Court which stated that 'The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Needle v. Hoyte,* 644 A.2d 1369, 1372 (D.C.1994) (indirectly quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960)). In particular, we note "the hazard of attempting to impute meaning to legislative inaction unless it is absolutely clear the Council can be said to have known about an issue, cared about it, and somehow dealt with it." *United States Parole Comm'n. v. Noble,* 693 A.2d 1084, 1103 (D.C.1997).

■ The District also urges that the primary purpose of the legislation was conformity with the federal scheme, and thus the section under consideration should be held in the tightest degree of congruity with the IRC. Though it is true in our jurisdiction that, "were we in doubt as to the meaning of this tax statute, we would endeavor to conform its interpretation to comparable provisions of the federal Internal Revenue Code," *National Bank of Washington, supra,* 431 A.2d at 4, resort to the IRC for the position that unincorporated businesses do not receive NOL deductions in the District is illogical in light of the continued fundamental difference between the federal and District tax law with respect to the separate tax treatment of unincorporated businesses. The District's implementing regulations themselves point to the preservation of unincorporated businesses as taxable entities as a significant difference between District and federal tax law. 9 DCMR 117.1, *supra.* And even the Committee Report admits only a goal of "limited conformity" with the IRC. Committee Report, *supra,* at 1.

Finally, the District expresses concern about the possibility of a double taxpayer benefit from the NOL deduction if allowed to unincorporated businesses. The District suggests that the deduction can already be utilized on the personal tax returns of businesses' owners, perhaps in prior years, because losses (unlike gains) are in practice passed down to them. We doubt that this is an inevitability. Whatever the current practice of the Department of Finance and Revenue,[11] both the statute and regulations appear to provide mechanisms to prevent duplicative use of the same deduction or can be amended to do so. As explained earlier, D.C.Code § 47–1803.2(a)(2)(D) (1996) prevents double taxation of unincorporated business income in the same year. If § 1803.2(a)(2)(D)'s reference to "share" is read to include both positive and negative income of the unincorporated business, losses will never be passed through to individual owners. It may be argued that passage of § 1803.3(a)(14) implicitly suggests such a reading. Further, 9 DCMR 119.4 (1996) states unequivocally: "No deduction which is allowed or allowable from the gross income of an unincorporated business ... shall be allowed as a deduction in the individual return of any person entitled to share in the net income of the business." By including the term "allowable," the regulation may well anticipate and disallow use in one year of a deduction for an owner that will become available to the business in the future. The regulation and statute together should be adequate to prevent double deductions. But we do not rule here definitively on these or any other questions relating to the individual tax returns of the owners. Our focus here is on the taxation of the unincorporated business, which the District has chosen to treat as a separate taxable entity.

---

11. The District appears to have historically construed the entirety of § 47–1803.2(a) (1996) and § 47–1803.3(b) (1996) as allowing the passage of losses onto individual owners for their tax benefit. Nothing in the code states this explicitly; the District apparently relies on general references to the IRC in allowing this pass-through of losses.

In sum, "the Tax Court was required to apply the law in effect at the time its decision was rendered and to base its judgment upon the provisions of that law interpreted in accordance with its purpose and spirit, rather than upon conclusions reached after 'subtle and involved reasoning.'" *District of Columbia v. Linda Pollin Mem'l Hous. Corp.*, 313 A.2d 579, 584 (D.C. 1973) (internal citation omitted). "Since we are interpreting and applying a statute which is clear on its face, and since appellants have not persuaded us that the language of the statute admits of more than its natural meaning, we are obliged to apply [it] as written." *Kleiboemer v. District of Columbia*, 458 A.2d 731, 737 (D.C.1983) (citing *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); 2A SUTHERLAND § 46.01 (1973)).

The decision of the Superior Court regarding the unavailability of a tax deduction for net operating losses to unincorporated businesses is reversed and the case is remanded for a redetermination of taxes owed, consistent with this opinion.

*Reversed and remanded.*